17 U.S. 444
 4 Wheat. 444
 4 L.Ed. 611
 McIVER'S Lessee
v.
WALKER et al.
 March 11, 1819
 
 1
 ERROR to the Circuit Court for the District of East Tennessee. This was an ejectment brought in that court, by the plaintiff in error, against the defendants. Upon the first trial of the cause, a judgment was rendered in the circuit court in favor of the defendants, and upon that judgment a writ of error was taken out, and the judgment reversed by this court, at February term 1815 (9 Cranch 173); and the cause was sent back to be tried according to certain directions prescribed by this court.
 
 
 2
 As the opinion given by this court upon the reversal of the first judgment contains a statement of the facts given in evidence upon the first trial, it is deemed proper to insert the opinion in this place. It is as follows:
 
 
 3
 'On the trial of this cause, the plaintiff produced two patents for 5000 acres each, from the state of North Carolina, granting to Stokely Donelson (from whom the plaintiff derived his title), two several tracts of land, lying on Crow creek, the one, No. 12, beginning at a box elder standing on a ridge, corner to No. 11, &c., as by the plat hereunto annexed will appear. The plat and certificate of survey were annexed to the grant. The plaintiff proved that there were eleven other grants of the same date for 5000 acres each, issued from the state of North Carolina, designated as a chain of surveys joining each other, from No. 1 to No. 11, inclusive, each calling for land on Crow creek as a general call, and the courses and distances of which, as described in the grants, are the same with the grants produced to the jury. It was also proved, that the beginning of the first grant was marked and intended as the beginning corner of No. 1, but no other tree was marked, nor was any survey ever made, but the plat was made out at Raleigh, and does not express on its face that the lines were run by the true meridian. It was also proved, that the beginning corner of No. 1, stood on the north-west side of Crow creek, and the line running thence down the creek, called for in the plat and patent, is south, forty degrees west. It further appeared, that Crow creek runs through a valley of good land, which is on an average about three miles wide, between mountains unfit for cultivation, and which extends from the beginning of survey No. 1, in the said chain of surveys, until it reaches below survey No. 13, in nearly a straight line, the course of which is nearly south, thirty-five degrees west, by the needle, and south, forty degrees west, by the true meridian; that on the face of the plats annexed to the grants, the creek is represented as running through and across each grant. The lines in the certificate of survey do not expressly call for crossing the creek; but each certificate and grant calls generally for land lying on Crow creek. If the lines of the tracts herein before mentioned, No. 12 and 13, in the said chain of surveys, be run according to the course of the needle and the distances called for, they will not include Crow creek, or any part of it, and will not include the land in possession of the defendant. If they be run according to the true meridian, or so as to include Crow creek, they will include the lands in possession of the defendants. Whereupon, the counsel for the plaintiffs moved the court to instruct the jury, 1st. That the lines of the said lands ought to be run according to the true meridian, and not according to the needle. 2d. That the lines ought to be run so as to include Crow creek, and the lands in possession of the defendants. The court overruled both these motions, and instructed the jury, that the said grant must be run according to the course of the needle, and the distances called for in the said grants, and that the same could not legally be run, so as to include Crow creek, and that the said grants did not include the lands in possession of the defendants. To this opinion, an exception was taken by the plaintiff's counsel. A verdict and judgment were rendered for the defendants, and that judgment is now before this court on a writ of error.
 
 
 4
 'It is undoubtedly the practice of surveyors, and the practice was proved in this cause, to express in their plats and certificates of survey, the courses which are designated by the needle; and if nothing exists to control the call for course and distance, the land must be bounded by the courses and distances of the patent, according to the magnetic meridian. But it is a general principle, that the course and distance must yield to natural objects called for in the patent. All lands are supposed to be actually surveyed, and the intention of the grant is to convey the land, according to that actual survey; consequently, if marked trees and marked corners be found, conformable to the calls of the patent, or if water-courses be called for in the patent, or mountains, or any other natural objects, distances must be lengthened or shortened, and courses varied, so as to conform to those objects. The reason of the rule is, that it is the intention of the grant to convey the land actually surveyed, and mistakes in courses or distances are more probable, and more frequent, than in marked trees, mountains, rivers, or other natural objects, capable of being clearly designated, and accurately described. Had the survey in this case been actually made, and the lines had called to cross Crow creek, the courses and distances might have been precisely what they are, it might have been impracticable to find corner, or other marked trees, and yet the land must have been so surveyed as to include Crow creek. The call in the lines of the patent, to cross Crow creek, would be one to which course and distance must necessarily yield. This material call is omitted, and from its omission arises the great difficulty of the cause. That the lands should not be described as lying on both sides of Crow creek, nor the lines call for crossing that creek, are such extraordinary omissions as to create considerable doubt with the court, in deciding whether there is any other description given in the patent, of sufficient strength to control the call for course and distance. The majority of the court is of opinion, that there is such a description. The patent closes its description of the land granted, by a reference in the plat which is annexed. The laws of the state require this annexation. In this plat, thus annexed to the patent, and thus referred to as describing the land granted, Crow creek is laid down as passing through the tract. Every person having knowledge of the grant, would also have knowledge of the plat, and would by that plat be instructed, that the lands lay on both sides the creek. There would be nothing to lead to a different conclusion but a difference of about five degrees in the course, should he run out the whole chain of surveys in order to find the beginning of No. 12; and he would know that such an error in the course would be corrected by such a great natural object as a creek, laid down by the surveyor in the middle of his plat. This would prove, notwithstanding the error in the course, that the lands on both sides of Crow creek were intended to be included in the survey, and intended to be granted by the patent.
 
 
 5
 'It is the opinion of the majority of this court, that there is error in the opinion of the circuit court for the district of East Tennesee, in this, that the said court instructed the jury, that the grant under which the plaintiff claimed, could not be legally run so as to include Crow creek; instead of directing the jury that the said grant must be so run as to include Crow creek, and to conform, as near as may be, to the plat annexed to the said grant; wherefore, it is considered by this court that the said judgment be reversed and annulled, and the cause be remanded to the said circuit court, that a new trial may be had according to law.' (9 Cranch 173.)
 
 
 6
 Upon the cause being remanded to the circuit court for a new trial, the plaintiff gave, in substance, the same evidence which he gave upon the first trial, and proved, or offered to prove, these additional facts—That it was the express and declared intention of the surveyor to locate the land upon Crow creek; that his field-notes called for crossing Crow creek, and that he supposed the courses inserted in the grants would place the lands upon Crow creek. Upon the former trial, it was proved, and admitted by the parties, that the beginning of lot No. 1, was marked as a corner, but that no survey had ever been made of that lot, or of the lots of land in dispute. Upon the last trial, the witness gave the same testimony, and further stated, that a corner was marked for the beginning of lot No. 1. That the compass was set at this corner, and a chain or two might have been stretched upon the first course of the grant; but of this he was not certain. During the last trial, various objections were made by the defendants to the testimony offered by the plaintiff; especially, to that which tended to prove that it was the intention of the surveyor to locate the land upon Crow creek, and that his field-notes called for crossing Crow creek. These objections were sustained by the court, and the testimony declared inadmissible.
 
 
 7
 Upon the evidence given in the cause, various instructions were prayed by the plaintiff, all of which the court refused to give; but charged the jury, that if, from the testimony then adduced, they should find that McCoy, the deputy-surveyor, when he went upon the ground to survey the land, did mark the beginning corner of lot No. 1, upon two poplars, and set his compass a given course, and that the chain-carriers stretched one or two chains upon that course, and that McCoy made his field-notes in conformity thereto, and that those field-notes were transmitted to James W. Lachey, the surveyor, who made out the plats annexed to the grants, and that he made out the said plats in conformity with the said field-notes, and that he marked down Crow creek, by guess, upon the plats, that this was so much of a legal and actual survey, as to show that the surveyor committed no mistake in what he did upon the ground, notwithstanding it might not be according to what he wished or intended in his own mind; and in that case, the lessor of the plaintiff would be barred by the courses and distances called for in the grant.
 
 
 8
 Under this instruction of the court, a verdict was found for the defendants, and judgment rendered accordingly, upon which the cause was again brought to this court by writ of error.
 
 
 9
 This cause was argued at the last term, by Swann and Campbell, for the plaintiff in error, and by Williams, for the defendants in error, and was reargued, at the present term, March 1st, by Swann, for the plaintiffs in error, and by Jones and Williams, for the defendants in error.
 
 
 10
 March 11th, 1819.
 
 
 11
 MARSHALL, Ch. J., delivered the opinion of the court.
 
 
 12
 The court has re-examined the The court has re-examined the opinion which it gave, when this cause was formerly before it, and has not perceived any reason for changing that opinion. Nor do the new facts introduced into the cause, in any material degree, vary it. If there had been a settled course of decisions in Tennessee, upon their local laws, different from the judgment pronounced by this court, we should not hesitate to follow those decisions. But upon an examination of the cases cited at the bar, we do not perceive that such is the fact. The judgment of the circuit court is, therefore, reversed, and the cause remanded for further proceedings.
 
 
 13
 JUDGMENT.—This cause came on to be heard, on the transcript of the record, and was argued by counsel: on consideration whereof, it is the opinion of this court, that the circuit court erred in the instructions given to the jury: it is, therefore, adjudged and ordered, that the judgment of the circuit court for the district of East Tennessee, in this cause, be, and the same is, hereby reversed and annulled. And it is further ordered, that the said cause be remanded to the said circuit court for further proceedings to be had therein, according to law.