Mr. Justice Richardson
delivered the opinion of the. oourt:
The two grounds relied upon by the counsel were,
1st. That the issue was not for the jury to determine, but for the Judge under the act of 1791.
2nd. That Laroche’s grant was limited to the specific! course and distance called for b}7 the plat, and not by the natural boundaries.
The act of 1791, granting the power of determining questions arising under caveats made, is as follows: “ And whereas, during the existence of the former constitution, ■certain powers were given by several acts and resolutions of the legislature, to the governor and council, which powers cannot be now exercised, by reason of the alteration in the executive authority of the state : For remedy whereof, be it enacted, that the Judges of the Court of Common Pleas, or any one of them, in their respective districts, are or is hereby vested with the exercise of the said powers, so far as the same shall extend to hearing and determining of causes in the court of caveats, which caveats shall be en^ tered as heretofore.”
By the terms of the act, the Judge is to decide all causes in the court of caveats. But it is not therefore illegal to draw information, upon questions of fact from the jury, ‘¿ad cuestiones facti respondent juralores.”
I know of no question turning upon facts, on which the Judge may not direct an issue, in order to obtain the assistance of the jury. In so doing, the court seeks for information, although not absolutely bound by the opinion of the jury. In questions confined to the Judge, such a, finding is like that upon an issue out of chancery, not imperative, though of great weight in the decision. But though not of binding authority, is a rational and usual source of information ; and is in the true spirit of our sysi tern of judicature.
As to the ground, that the case ought to have been suspended until the Appeal Court should have decided., whet •ther the issue ought to have gone to the jury,?
*196 This like ah iru'ti-r.us to contiene a cause, was a motion addressed to u; Jiscretion of the court.
We come ' .■■-. to ihe question of location, which was of real importa:'-- ■ ■ hi the case, a.ud the proper object of the enquiry. If there was any vacant land in the defendants survey, he was entitled to a grant. But was there any vacant land ? It is not denied that the land alleged to be vacant, lay within the natural boundaries, called for by the grant to Laroche ; — that is, it lay between the marsh and creek to the westward; Winyaw River to the south-westward ; the Sea to the eastward, and the Basin to the northward. By the description set forth in the grant, the location is plain and unquestionable. The whole island, (unless the marsh be so called,) is clearly within it. ’ But it was urged, that as the plat called for specific stations, as “ trees,” “ stumps,” a wreck, &c. and in some instances, laid down a precise course and distance from one station to another, we are to be governed by the course and distance thus laid down, which would restrain the limits much within the natural boundaries, and leave to the caveatee the vacant land claimed. But such a principle of location has in this case insuperable difficulties. Not a corner or station being found, wo have no point of departure, i. c. no beginning or term from which to measure coarse or distance. Not a single point from which the surveyor was to set put to measure course and distance could be found. For aught that appeared too, the corners and stations, whether natural or artificial, may have been upon the margin of the river, sea, or basin called for, so as to he consistent with the natural boundaries. This probable supposition would also reconcile the plat to the grant, which ought, if possible to be clone. Again,, the long eastern line of the plat, though continually varying, has only its general course laid clown, with the trifling exception, as far as the Look Out. And tho’ it calls for natural and artificial stations, it is a waving line, as if pursuing the water’s edge, and moreover calls for the sea-shore. The plat too is marked thus, u The North *197 Island by a scale of 40.” Why use the comprehensive -name of “ the North Island,” if apart only were intended to be delineated ? The certificate of the surveyor also describes the land as being a place called cc North Island, &c.” Again, I ask, why this comprehensive term “ a place” unless in order to signify the whole. “ The Isl- and” or the “ place” means the whole island, of place. It was suggested that the word at” may have been left ■out, but the original certificate to the plat has no such qualifying preposition, and even were it so, I should deem it but of little weight, opposed as it would be to the other expressions and marks, which concur with the natural boundary, and to the important and satisfactory rule of reconciling the plat to the grant, in order to render the whole consistent in itself. The plat and grant appear then easily reconciled, though at the first glance of the plat alone, one might well conclude, that if a corner or station could be designated, remote from the natural boundary, the course and distance might be taken as the principle of location. But to assume it in this instance, would be to pursue the last rule in geometrical mensuration in place of the first and best, which is to follow the natural and im-. moveable boundaries, unless the specific and artificial marks fall evidently short of them. Whereas it is only in default of both, the artificial and natural marks, that the mere course and distance called for are to govern.— (6 Mass. Sep. 131, 252. 15 Johnson, 447. 12 So. 252. 4 Hen. & Mum. 130. 4 Wheaton, 444. 6 Cranch, 237. 3 Dallas, 436.) For my part I have no conception of a correct location of land, by course and distance, where there is no terminus a quo. Where there is no station or corner found, it becomes absolutely necessary to resort to boundaries, and even to the boundaries of surrounding lands, in order to locate the tract calling for them. In the case before us, the surveyor must have assumed some point, and he seems to have fixed on that where the Cassena stood, assuming that it stood remote from the ri-i ver. But at this late day, why not, when it is consistent *198 too with the natural boundary, suppose the Oassena to have stood upon the verge of the shore, so as to render it consistent with the boundaries required by the grant.— Assuredly surplus land being found, is of little consequence ; for the quantity of land is whatever is contained within the true boundaries ; and the end of the location is to fix the boundaries, which being done, the quantity follows, being the contents within them. The notice in the plat of the number of acres is in fact but an expression in the general description, and is very seldom put down with accuracy. Upon a near inspection then (for it is seldom that the location of land depends so little upon extrinsic evidence) it is satisfactorily evident, both from the plat as well as the grant, that no part of the 500 acres contained in the defendants survey was vacant land.
Simons, for the motion.
The motion is therefore dismissed.
Justices Colcock, Nott and Johnson, concurrred.