Hollister
*v.*
The Union Co.

---

HIGLEY *against* BIDWELL and others.

9  447
71  572
9  447
76  615

The doings of freeholders under the statute of 1719, regarding the bounds of lands, setting up and fixing the bounds in controversy, are *prima facie* evidence of title.

In the description of land, fixed natural objects controul courses and distances. Therefore, where in a survey of land, one of the boundaries was described thus : " Running from thence [a certain rock] *Westward*, upon a *South West* line, measured from said rock 108 rods ; at the end of said measure, marked a white oak tree on the *Westward* side of the next brook *West of Ned's* brook ;" it was held, that the boundary in question was to be determined by the place of such white oak tree, without regard to the course and distance mentioned in the survey.

In 1765, while *A.* and *B.* were proprietors of adjoining lands, and a contro. versy existed between them respecting their boundaries, *B.*, in pursuance of an agreement between him and *A.*, released to *A.* the disputed tract. In an action tried in 1833, between *E.* claiming under *A.* and *F.*, wherein the boundary line between the lands formerly owned by *A.* and *B.* was in question, the plaintiff, in support of his claim, offered in evidence, the declarations of *B.*, and of *C.*, a tenant under *A.*, made after 1765, *B.* and *C.* having long since deceased. Held, that such declarations were admissible.

THIS was an action of trespass *de bonis asportatis ;* tried at *Hartford, February* term, 1833, before *Bissell, J.*

The defendants were select-men of the town of *Canton.* The property in question was taken under a warrant for the collection of town taxes, made out by the defendants, including a tax on land owned by the plaintiff, which, he claimed, was exempt from taxation, by the statute of 1719. *Stat.* 66. *rev.* 1702.

In support of his claim, the plaintiff offered in evidence a vote of the town of *Simsbury*, (whereof the present town of *Canton* was then a part,) passed in 1706, sequestering certain lands for the support of the gospel ministry, and appointing a committee to lay out the same. He also offered in evidence the doings of that committee, describing the land laid out thus : " This land is situated in *Simsbury*, at a place, called *Ned's* brook, lying *Northwardly* of *Cherry's* pond. The first

*Hartford,*
*June, 1833.*

Higley
*v.*
Bidwell.

butment is on the *West* side of *Ned's* brook, *Southward* from the path five or six rods, at a rock ; running from thence *Westward*, upon a *South South-West* line, measured from said rock 108 rods; at the end of said measure, marked a white oak tree on the *Westward* side of the next brook *West* of *Ned's* brook ; then turned *South* and measured 20 rods," &c.   The plaintiff also offered in evidence a lease from the committee of the first society in *Simsbury*, dated in 1743, of the land so sequestered, to *Ezekiel Humphrey*, for 999 years ; and claimed that the land taxed, was in the *South East* corner, and was a part of the tract so sequestered, and laid out, and leased.

It was admitted, that the *North West* corner bound of that tract was a known monument, about which there was no dispute.   The principal question related to the *West* line.   If it extended but 108 rods from the rock, the land in question was not embraced in the tract sequestered.   But if it extended to the *West* side of the brook next *West* of *Ned's* brook, it was included in that tract.

The plaintiff claimed, and prayed the judge to instruct the jury, that without regard to the length of the *West* line, it must be so extended as to reach to the *West* side of the brook next *West* of *Ned's* brook.   And the judge so instructed the jury.

The plaintiff claimed, that the ancient boundaries were in accordance with the survey and laying out of the tract, as claimed by him.   To prove this, he offered in evidence the doings of certain freeholders, in 1757, setting up and fixing the boundaries of said tract in conformity with the bounds established by the committee in 1706 ; to which the defendants objected.   But the court admitted the evidence.

It was admitted, that *Benjamin Dyer* formerly owned the land *South* and *West* of that now owned by the plaintiff ; that a controversy having arisen between him and *Ezekiel Humphrey*, respecting their boundaries, in 1765, an agreement was made between them, by which the latter released to the former the land in question ; and that it came, by regular conveyances, from *Dyer* to the plaintiff.   The plaintiff offered in evidence the declarations of *Ezekiel Humphrey* and *Daniel Dyer*, both long since deceased, made after 1765, while *Daniel Dyer* was in possession, claiming under *Benjamin Dyer*, of the land in question, to shew that the line extended to the *West* side of said brook, and that the ancient boundary was there.

To the admission of this evidence, the defendants objected, on the ground that there had existed a controversy regarding the boundary, and on the ground that the possession had not been in conformity with the plaintiff's claim. The judge overruled the objections and admitted the evidence.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial, on account of the interlocutory decisions above stated, and for a misdirection.

*Hungerford* and *T. C. Perkins*, in support of the motion, contended, 1. That the doings of the freeholders were inadmissible. In the first place, they were inadmissible even between the parties. *Humphrey* v. *Pison*, 1 *Root* 259. Secondly, if admissible between the parties, they cannot affect the defendants, who are neither parties nor privies. 1 *Stark. Ev.* 185. 191, 2. *Rex* v. *Cotton*, 3 *Campb.* 444. Thirdly, if inadmissible as a record, they cannot be received as inferior evidence. *The Berkley Peerage* case, 4 *Campb.* 404, 5.

2. That the declarations of *Humphrey* and *Dyer* were inadmissible. First, because there were no accompanying acts of enjoyment. 1 *Stark. Ev.* 57. 59. *Weeks* v. *Sparke*, 1 *Mau. & Selw.* 689. *Russell* & al. v. *Stocking* & al. 8 *Conn. Rep.* 236 241. Secondly, because it was for their interest to make the declarations. 1 *Stark. Ev.* 57. 69. *Roe* d. *Brune* v. *Rawlings*, 7 *East* 279. 290. Thirdly, because they were made *post litem motam.* *Rex* v. *Cotton*, 3 *Campb.* 445. *The Berkley Peerage* case, 4 *Campb.* 405.

3. That the charge was incorrect. It was necessary to recur to the length of line, to ascertain where the monument was. The question was not between a fixed monument and length of line, where one comes in conflict with the other, but whether both might not be taken together, in determining the boundary sought. The charge *excluded* the length of line from the consideration of the jury.

*N. Smith* and *F. Parsons*, contra, contended, 1. That the doings of the freeholders were properly admitted. First, because they were pursuant to the statute of 1719, and were, by that statute, made *prima facie* evidence of the bounds, ac-

*Hartford,*
*June, 1833.*

Higley
v.
Bidwell.

cording to the right of the parties.(a) Secondly, if not evidence, under the statute, they were admissible as declarations of deceased men acquainted with the fact.

2. That the declarations of *Humphrey* and *Dyer* were admissible. They were old men, well acquainted with the fact. 1 *Swift's Dig.* 766. 1 *Stark. Ev.* 69.

3. That the charge was correct. The survey gives a twofold description of the bound in question; first, that it is 108 rods, on a *South West* line, from a given point, *viz.* a rock; secondly, that it is a white oak tree on the *Westward* side of the next brook *West* of *Ned's* brook. The defendants claim according to the first description; the plaintiff according to the second. The only question, then, is, which shall govern—course and distance, or a fixed, visible monument. The authorities leave no doubt on this point. *Belden* v. *Seymour*, 8 *Conn. Rep.* 19. 4 *Kent's Comm.* 455. and authorities there cited.

PETERS, J. The motion presents three questions.

1. Were the doings of freeholders admissible ? This was a proceeding under the statute of 1719. *Stat.* 112. *rev.* 1750. The freeholders were appointed by a magistrate, and sworn

(a) *Stat. ed.* 1750. *p.* 112. *ed.* 1796. *p.* 256. That statute provides, that when the proprietors of adjoining lands have lost their bounds and cannot agree to the fixing of them, three disinterested freeholders, appointed by a justice of the peace, after due notice to the proprietors concerned, shall have power to set up and fix such bounds between them; and the bounds which shall be so fixed, shall be entered in the records of the town where such lands lie, and remain the bounds of such lands; the freeholders being first sworn to lay aside all prejudice and partiality, and to erect said bounds according to the true and just right of the parties. Then follows a proviso, that the proceedings under this act shall not hinder any proprietor dissatisfied with the bounds so fixed, from bringing any action for the maintaining of his right to, or recovering the possession of, such land as by the setting up of such bounds, shall be taken or withheld from him; and another proviso, that when the bounds so set up shall take any land from any proprietor, which he has for any time held possession of against the other proprietor, nothing in this act or any thing done therein, shall be taken to disseise such possessor; but whensoever any action is brought against such possessor, by the other proprietor, to recover from him possession of said land, if such possessor shall not prove, upon the trial, that the bounds or line which he claims to hold to, are the just and true bounds, judgment in the said action shall be given for the said proprietor to recover the possession according to the bounds set up as aforesaid.

to act impartially. They were empowered to set up and fix bounds, which the statute declares shall be recorded, and remain the bounds of such lands. The same statute further provides, that whenever any action is brought to recover possession according to the bounds set up, if the defendant shall not prove, that the bounds he claims to hold to, are the just and true bounds, judgment shall be given for the plaintiff to recover possession according to the bounds set up, *i. e.* shall be *prima facie* evidence of title. The only objection to the proceedings of this domestic tribunal, is the case of *Humphrey* v. *Pison*, 1 *Root* 259. which contains neither fact, argument nor law.

2. Were the declarations of *Ezekiel Humphrey* and *Daniel Dyer* admissible? The principal objection seems to have been, that a controversy had previously existed between *Ezekiel Humphrey* and *Benjamin Dyer* (under whom *Daniel Dyer* occupied) respecting their boundaries. But it appears to have been an amicable controversy; ending in a friendly compromise, by a recognition of the ancient boundaries established by the committee, who surveyed and laid out the original sequestration in 1706; and by the freeholders, who set up and fixed the same in 1757; and by a release from the original lessee to the other party, of the land in question. And we are informed, by the late Ch. J. *Swift*, that in this state, the declarations of old people respecting the ancient bounds or monuments between the lands of individual proprietors, who were acquainted with them, have constantly been admitted in evidence. 1 *Swift's Dig.* 766. *Swift's Ev.* 123. 1 *Phill. Ev.* 197, 8. and cases there cited.

3. Was the charge of the court correct? The question arising on this charge has been so often and so uniformly decided, that it would probably never have reached this court again, without the aid of the legislature.(b) But as it is here, we must decide it, although it comes not " *ut novus hospes.*" The first case on this point within my memory, came before the superior court, in *February*, 1793, in *Snow* v. *Chapman*, 1 *Root*, 528, wherein it was decided, that in a grant of land, within certain bounds, calling it more than it is, the covenants extend only to the land within the bounds. Similar decisions

(b) Vid. *Stat.* 1830. *p.* 288. *c.* 3. *s.* 1.

*Hartford,*
*June, 1833.*

Higley
*v.*
Bidwell.

have been made in many of our sister states. I will notice a few of them. In *Howe* & al. v. *Bass*, 2 *Mass. Rep.* 380. 382. *Parker*, J. said : " There is no rule of construction more established than this, that where a deed describes land by its admeasurement, and at the same time by known and visible monuments, these latter shall govern." In *Pernam* v. *Weed*, 6 *Mass. Rep.* 131. 133. *Parsons*, Ch. J. said : " When the boundaries of land are fixed, known and unquestionable monuments, although neither courses, nor distances, nor the computed contents, correspond, the monuments must govern." In *Preston's* heirs v. *Bowmar*, 6 *Wheat.* 580. 582. *Story*, J. said : " It may be laid down as a universal rule, that course and distance yield to natural and ascertained objects." In *McIver's* lessee v. *Walker* & al. 9 *Cranch* 173. S. C. 4 *Wheat.* 444. 447. *Marshall*, Ch. J. said : " It is a general principle, that the course and distance must yield to natural objects called for in the patent." And the late Chancellor *Kent*, in his excellent *Commentaries*, says : " In the description of the land conveyed, the rule is, that known and fixed monuments controul courses and distances." *Vol.* 4. *p.* 445. The Chief Justice of this Court, in delivering his opinion in *Belden* v. *Seymour* & al. 9 *Conn, Rep.* 19. says : The rule is, that known and fixed monuments controul courses and distances."

I would not advise a new trial.

The other Judges were all of opinion, that the case was properly disposed of, and would not disturb the verdict. DAGGETT, Ch. J. and WILLIAMS, J., however, expressed some doubt whether the declarations of *Humphrey* and *Dyer*, made *post litem motam*, were admissible.

New trial not to be granted.

---

### REGULA GENERALIS.

Special assignment of errors.

IN every motion in error, there shall be a special assignment of errors, and the Court will hear no others; which assignment shall either be made when the motion is allowed, or be made and lodged with the clerk of this Court, at least twelve days before the session of the Court to which the motion is returnable.