Thtjrman, J.
The object of the bill is to establish the boundary line between a tract of land, owned by complainant, and another tract, owned by the defendants; the line being the western boun•dary of complainant’s land, and the eastern boundary of defendants’.
The material facts are as follows :
Both parties claim under William Hogg, who was the owner of the whole of section 2, of township 6, in range 14, United States military lands, except two lots of 450 and 270 acres, making 720 .acres, in the northeast quarter of the section. These 720 acres were in form a rectangular parallelogram, bounded on the north and east by the section lines, on the south by the southern boundary of the quarter section,- and on the west by a. line drawn par *317 allel to its eastern boundary. The southern boundary of the quarter section is part of a line drawn east and west through the center-of the section. In order to make sales of his part of the section, Hogg divided it (the part) into thirteen lots. This division was upon paper merely, without actual survey. The plat, by which it was evidenced, represented the whole section. The 720 acres were properly laid down, and the residue of the section, being his part, he-divided as follows : Assuming that the section was just what the law prescribed, namely, 800 poles square, contents 4,000 acres, he-divided the south half of the section into eight, and the northwest quarter into four lots of equal size, and of the same form, namely, a square. These lots he numbered from 1 to 12, inclusive, and added the figures, 250, to designate the number of acres *eaeh contained. The remainder of his land, being all of the northeast quarter of the section. except said 720 acres, he left in one lot, marking it Ho. 13, and noting its area by the figures 280. At the-foot of the plat, and in reference to the square lots, he wrote:
“ Each of the above is 200 porches square.”
Such was the division as evidenced by the plat.
On December 10, 1832, he sold to James Scarborough and Willis O. Phillips, two of the defendants, and to Joseph Shaw, the ancestor of the other defendants, certain portions of the premises, describing them, in the article of sale, to which the plat aforesaid, or-a copy of it, is prefixed, as : “ 500 acres of land, being Nos. 3 and 7, as marked with their names [the vendees’] on the above plat, and being part of section 2, range 14, and township 6, United’ States military land, in the State of Ohio, as described by the plat above.” And in the squares in the plat, representing the lots 3 and 7 respectively, he wrote the names of the vendees. These lots 3- and 7, as delineated on the plat, embrace precisely the south half of the northwest quarter of the section. The consideration of the sale is stated in the article to be $2.50 per acre, payable in specified installments; amounting, in the aggregate, to $1,250.
On May 19,1834, Hogg sold and conveyed to the complainant lot No. 13, describing it as, “All that certain piece of land, containing 290 acres, more’or less, being a part of the second section, sixth township, and fourteenth range of lands approjDriated, etc- . . . ; which said tract of 290 acres hereby granted as part of being the northwest corner of a 450-acre tract belonging to said second section, is bounded as follows: Beginning at a point. *318 •O. Wolfe and a part of said section, thence south by the land of • said Wolfe and laird of Jones 400 perches to land of William Logsden ; thence west to the northwest corner of said Logsden’s 250-acre tract; thence north by lands of Shaw, Scarborough, and Phillips, and Daniels, and Ohalfant, 400 perches; thence east to the place of beginning.” The lands referred to in this description as ^belonging to Wolfe and Jones respectively, are the 720 •acres before mentioned ; Logsden’s land is one of the square lots laid out by Hogg, being, according to the plat, the northwest quarter of the southeast quarter of the section ; Shaw’, Scarborough, and Phillips’ lands are the premises sold to them as aforesaid; and the lands ■ of Daniel and Ohalfant aré what, as delineated on the plat, is the northeast quarter of the northwest quarter of the section, or some part of it.
On November 12, 1844, William Hogg having previously died without having made a conveyance to Shaw, Scarborough, and Phillips, and Shaw being also dead, George Hogg, the executor of :said William, by virtue of a power contained in his will, conveyed said lots 3 and 7 to the defendants: in which conveyance the article of sale is substantially recited, a copy of the plat made part of the deed, and the lots further described as “ constituting the south half of the northwest quarter of said section, and each estimated to contain 250 acres, be the same more or less.”
The controversy in this case grows out of the fact that the section, instead of containing but 4,000 acres, contains about 4,100, and that this surplus of 100 acres is in part occasioned by the boundary lines of the section, which run east and west, being over 800 poles in length.
The complainant contends that the true construction of the arti- • cle of sale to Shaw, Scarborough, and Phillips restricts them to 500 .acres, net measure, to be laid off in the form of a parallelogram of 200 poles in width, and extending from the western boundary of the section east 400 poles, and no more.
If this construction be given to the article, the complainant’s •deed will embrace a part of the northwest quarter of the section included in the deed to the defendants. But if, by the article, the whole south half of that quarter was sold, the complainant’s land is wholly in the northeast quarter, and includes none of the land in -controversy.
*On the part of the complainant it is argued that the de *319 fendants should be restricted as above, because: 1. Lots 3 and7 are described by the memorandum at the foot of the plat as 200 perches square. 2. Their contents are noted as 250 acres each. 3. They were sold at $2.50 per acre, and the aggregate of the consideration was $1,250, the price of 500 acres at that rate.
For the defendant it is insisted : 1. That as lots 3 and 7’ are represented on the plat as embracing the whole of the south half of the northwest quarter of the section, they can not be restricted to a less area. 2. That it was the manifest intention of Hogg to embrace all the land he owned in the thirteen lots laid out by him ; but if the construction contended for by complainant prevails, the thirteen lots do not embrace all; that if 3 and 7 are to be cut down as above, each of the remaining ten square lots must, in like manner, be curtailed—thus leaving long and narrow strips belonging to Hogg or his estate, and producing infinite confusion. 3. That if the memorandum that the lots are 200 perches square is found to be inconsistent with the plat, the authorities are clear that the latter must prevail. 4. That a statement of quantity is the weakest of all particulars of description, and can never prevail against an unambiguous map. 5. That every grant is to be taken most strongly against the grantor. For these and other reasons the defendants contend that the article covers the whole of the south half of the northwest quarter.
We have not a doubt how this case should be decided, either upon reason or authority.
First. Were it conceded that the article covered a tract 400 poles long by 200 wide, and no more, the complainant would have no case, unless he has shown that the western boundary of the tract is the section line. ' For if, instead of laying off such a tract from the section line eastwardly, we lay it off from the eastern boundary of the northwest quarter westwardly, the surplus, instead of falling to the complainant, will lie at the west end of the tract, and belong to Hogg’s estate. Now, the article does not give any beginning ^corner of the land, or make any particular line the base line. It is only by reference to the plat that the complainant is enabled to say that the defendants’ land is bounded on the west by the section line. But the same plat shows that it is bounded on the east by the eastern boundary line of the quarter section. There is, therefore, just as much reason for holding that the tract begins at the *320 latter line and runs west, as there is for holding that it begins 'at the former and runs east.
aSecondly. If the “ memorandum ” is to be regarded as a call for a line 400 poles long, the plat is an equally valid call for a line from the western boundary to the center of the section.
' Thirdly. Under the circumstances of this case, the statement of quantity is a mere estimate. According to the plat, lots 3 and 7 are identical with the south half of the northwest quarter of the section. The parties to the article had equal means of ascertaining-the area of this south half. -No fraud was practiced by either, nolis there any evidence that one relied upon a representation of the other; The law prescribed the quantity of the section, 4,000 acres. A half of a quarter, being an eighth of the whole, would be 500-acres. There was no reason to suppose that the area would be found to materially vary from that quantity. The price per acre was small, and an excess or deficit of a few acres would be of little-consequence. ¥e have no doubt but that the parties so regarded it, and that the one was willing to sell,- and the others to take, the premises for 500 acres, whether that was the exact quantity or not.
Fourthly. We think it manifest that Hogg intended that the 13 lots should embrace all his land. And this intention is quite sufficient to control the estimate of quantity and the memorandum that the lots are 200 perches square. The object of construction is to ascertain the intent of the parties, and when this intent is discovered, it governs, unless the language employed renders it impossible to give it effect. There is no such difficulty in this case.
*Jbastly. The authorities are clearly on the side of the defendants. They show that, in a -case like this, the map, or plat, is more to be relied on than a call for distance and quantity. McIvor’s Lessee v. Walker, 9 Crunch, 173; S. C., 4 Wheat. 444; Lunt v. Holland, 14 Mass. 149; Davis v. Rainsford, 17 Mass. 207; Magoun v. Lapham, 21 Pick. 135.
Entertaining the views we have expressed, it is unnecessary to say whether, had we come to an opposite conclusion, we could afford the conrplainant relief. This depends upon whether he lias made a'case by his bill and proofs for the cognizance of a court of equity. The bare fact that aliñéis in controversy does not entitle-a party to resort to this forum. There must, in addition, be something in the nature of his title, or in the circumstances of the case, *321 that brings it under an acknowledged head of equity jurisdiction ; as, for instance, the want of an adequate remedy at law, or the fraudulent suppression of evidence by his adversary, or a necessity for resorting to equity to avoid a multiplicity of suits. 1 Story’s Eq., secs. 619 to 622, inclusive.
It may possibly be, that were the merits of the controversy on the side of the complainant, the allegations of fraud in his bill would, if supported by proof, make a proper case for .the chancellor. But it would, perhaps, be found difficult to say that these allegations are proved.
The bill must be dismissed.