# SILVER KING COALITION MINES COMPANY *v.* CONKLING MINING COMPANY.

## CERTIORARI TO AND APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 158, 187. Argued January 19, 1921.—Decided February 28, 1921.

1. Monuments prevail over courses and distances. P. 162.
2. A patent which describes a lode mining claim by courses and distances, but which also calls for monuments at the first two corners, and refers to the other two turning-points as "corner No. 3" and "corner No. 4," is subject to interpretation as calling for monuments at all four corners, and opens the door to field notes showing such

monuments and to parol evidence of their actual location on the ground. Pp. 159, 162.

3. And such interpretation is greatly strengthened when the patent by its language assumes identity of the claim as therein described and patented with the lot as surveyed, platted and designated by the surveyor general, in view of his duty to see that such lots are identified by monuments on the ground. P. 161.

4. Under the mining law, an application to patent a lode claim is for a claim marked by monuments; the posted and published notice of application refers to a claim so marked; and such notice, as a jurisdictional basis, will not sustain a patent for land outside the monuments, as against a senior location. P. 161.

5. The rights of the respondent under its patent were fixed by the register's final certificate. P. 162.

6. The Act of April 28, 1904, amending Rev. Stats., § 2327, and declaring that monuments shall prevail over inconsistent descriptions in mining patents, merely made more explicit the previous policy of the law. *Id.*

230 Fed. Rep. 553, reversed.

Review of a decree of the Circuit Court of Appeals, which reversed a decree of the District Court dismissing a bill to establish title to a body of ore as within the plaintiff's patented mining claim and to obtain an account for ore extracted. The case is stated in the opinion, p. 159.

*Mr. Thomas Marioneaux,* with whom *Mr. W. H. Dickson, Mr. A. C. Ellis, Jr.,* and *Mr. R. G. Lucas* were on the briefs, for petitioner and appellant, presented, among other points, the following:

The Court of Appeals was in error in holding that the language of the Conkling patent is such that the calls for 1500 feet forbid the reception of any evidence, even of the Conkling field notes, to show the actual positions of posts Nos. 3 and 4, as erected upon the ground at the time of the patent survey.

The finding of the trial judge that the original position of the west end line of the Conkling claim as marked by posts 3 and 4 thereof was 1364.5 feet distant from the

easterly end line, was not only well warranted but imperatively demanded by the evidence.

The Land Office is without jurisdiction to issue a patent which, by its terms, embraces a greater area than is actually marked out upon the ground by the surveyor making the patent survey at the instance of the applicant for patent.

The language of the Conkling patent must be so interpreted, if possible, as to confine the ground within the boundaries erected at the time of the patent survey to mark the corners of the claim.

Considered in the light of the law requiring monuments to be erected to mark the corners of mining claims when surveyed for patent, the calls in the Conkling patent, "thence second course south 60 deg. 45 min. west 1500 feet to corner No. 3; thence third course south 21 deg. 9 min. east 600 feet to corner No. 4;" are in fact calls for monuments.

*Mr. Edward B. Critchlow* and *Mr. Wm. W. Ray*, with whom *Mr. Wm. D. McHugh* and *Mr. Wm. H. King* were on the briefs, for respondent and appellee: ·

The patent of the United States is the deed of the owner (*United States* v. *Stone*, 2 Wall. 525), and in the absence of statute is to be construed in accordance with the rules of the common law.

As to the corners Nos. 3 and 4, no monuments were called for in the patent. The corners were merely abrupt changes in direction. The point of beginning and corner No. 2 of the survey were fixed and in no wise in dispute. It was, therefore, not permissible to consider parol evidence or field notes of survey of the various claims. *Pollard* v. *Shively*, 5 Colorado, 315–317; 3 Washburn, Real Property, 5th ed., p. 428; *Drew* v. *Swift*, 46 N. Y. 204; *Negbaur* v. *Smith*, 44 N. J. L. 672; *Chinoweth* v. *Haskell*, 3 Pet. 92; *Boardman* v. *Reed*, 6 Pet. 328; *Bruck-*

ner v. *Lawrence,* 1 Douglas, 19; *Wells* v. *Jackson Iron Manufacturing Co.,* 47 N. H. 235.

As to agricultural land, from the beginning, it has been expressly provided by statute that the lines as actually run upon the ground by the surveyor control the courses and distances of the government patent. Rev. Stats., § 2396.

No such statute was ever passed by Congress with respect to mineral lands until the year 1904. Rev. Stats., § 2327, which governed as to the descriptions or boundaries of claims conveyed by lode claim patents, expressly directed that the surveyor general should treat as the boundaries of such claims the lines described and platted.

It was the evident purpose of this statute that these claims should be so measured and platted that the descriptions placed in the patents and the plats in the surveyor general's office according therewith should constitute the final record upon which reliance should be placed, and such was the construction placed upon it, prior to the amendment of 1904, by the Land Department. *Mono Fraction Lode Mining Claim,* 31 L. D. 121.

The original survey and plat and all the evidence of acts done prior to the issuance of the patent were submitted to the Land Department; from these the Department determined what land the claimant was entitled to receive; and the patent was the adjudication, by competent authority, that the precise land described in the patent should be and was conveyed to the patentee. This adjudication was final and conclusive, and not subject to any collateral attack. *Uinta Tunnel Mining Co.* v. *Creede & Cripple Creek Mining Co.,* 119 Fed. Rep. 164, 166; *King* v. *McAndrews,* 111 Fed. Rep. 860, 863, 866; *Doe* v. *Waterloo Mining Co.,* 54 Fed. Rep. 935, 940, 56 Fed. Rep. 685, 687; *Carson City Mining Co.* v. *North Star Mining Co.,* 73 Fed. Rep. 597, 600; *Golden Reward Mining*

*Co.* v. *Buxton Mining Co.,* 79 Fed. Rep. 868, 874; *St. Louis Mining Co.* v. *Montana Mining Co.,* 113 Fed. Rep. 900.

Cases where, in an effort to change the description of a patent, proof of the field notes and the location of the monuments was made without objection, throw no light upon the discussion. *Resurrection Mining Co.* v. *Fortune Mining Co.,* 129 Fed. Rep. 668; *cf.* Lindley on Mines, §§ 777, 778; *Miller* v. *Grunsky,* 141 California, 441.

Where there is any surface conflict whatever and there is a failure to adverse, the issuance of the patent operates as a conclusive determination of priority in favor of the patentee as to the conflict area. 3 Lindley on Mines, § 742.

The Act of 1904 was not intended to have any retroactive effect. If it were, it would be void under the Fifth Amendment as applied to this case.

Inasmuch as the lot number was given to this claim before any official survey was made, there is no foundation for the theory that, because the number is incorporated in the patent, therefore the plain and unambiguous description of the patent may be attacked by evidence of the survey.

All the preliminary proceedings were for the purpose of enabling the Land Department to decide what land the claimant was entitled to receive; the patent was the final determination.

By mentioning in connection with certain corners monuments which mark the same, the patent shows that it did not treat the word "corner" as including a reference to a monument. *Resurrection Mining Co.* v. *Fortune Mining Co.,* 129 Fed. Rep. 668, 672.

Only one of the two claims in conflict with the Conkling claim was of prior location; but the date of location is immaterial. Both were junior in time of patent, and in their patent the conflict area was expressly excluded in

favor of the Conkling. Under these circumstances, the superiority of the Conkling is conclusively established, since their owners failed to adverse the Conkling appli- cation. 3 Lindley on Mines, § 742; *Gwillim* v. *Donnellan*, 115 U. S. 45.

Petitioner's main argument amounts to the assertion that in all cases the jurisdiction of the Land Department over mineral lands is a jurisdiction *in rem* analogous to the jurisdiction of the courts in proceedings of that character, and that its jurisdiction in all such cases is dependent upon the presence of certain essential elements of jurisdiction; namely, an application, seizure and due notice. In short, it is contended that any error or defect in the seizure, or in other words, the survey and the post- ing of notice, is jurisdictional and fatal. 3 Lindley on Mines, § 713; *El Paso Brick Co.* v. *McKnight*, 233 U. S. 250. The two authorities cited by no means sustain the contention.

If the jurisdiction of the Department were thus limited, every patent ever issued is subject to impeachment at any time upon a showing, either that the officer who made the survey made a false or an erroneous return in that the boundaries were not actually marked, or that such markings as were made were insufficient to distinctly mark its limits, or that the required notice was never posted upon the claim, or that its posting was de- fective.

An analysis of petitioner's argument on this question shows that it necessarily presupposes a lack of authority on the part of the Department to adjudicate or determine the boundaries of any claim. If petitioner's contentions are correct the most that the Department could ever do upon an application for patent would be to determine that the applicant was entitled to a conveyance from the Government covering a parcel of land of uncertain location, and, in so far as the Department was concerned,

of undeterminable boundaries, but which would be found staked off upon the ground in a certain general locality. Such a determination would and could not even be conclusive of the fact that there was a tract so staked, and; should the question ever arise as to whether, or where, the stakes had been set, it, would have to be determined anew upon whatever evidence was then obtainable.

We assert the law to be that, not only was it within the power, but it was the duty, of the Department to determine and forever settle the boundaries of lands conveyed by patent, with certainty, and this not only in the interest of the Government but in the interest of patentees as well. *Beard* v. *Federy,* 3 Wall. 478; *Cragin* v. *Powell,* 128 U. S. 691; *Maxwell Land-Grant Case,* 121 U. S. 325; *Stoneroad* v. *Stoneroad,* 158 U. S. 240; *Knight* v. *United States Land Association,* 142 U. S. 161.

The rules of the Department antedating 1904 (see those of April 28, 1891) indicate a policy to avoid the doubts and uncertainties which would be occasioned by treating all of the unstable survey stakes as monuments, and an intention that the description written in the patent, the final record, should be in and of itself sufficient without a reference to the plat. *Sulphur Springs Quick Silver Mine,* 22 L. D. 715. This was consistent with Rev. Stats., § 2325. The monuments, which are to mark distinctly the boundaries of the claim at the time of the survey, are expressly distinguished in that section from the natural objects and permanent monuments with reference to which the claim is to be identified in the patent description.

It is submitted that the judgment of the Land Department is as conclusive of the fact that the survey monuments were set and that, as set, they distinctly marked the boundaries of the area ultimately patented, as it is conclusive that the original location was properly marked upon the ground, or that any other antecedent step in the patent proceeding was regularly taken.

These survey stakes or monuments are in no sense permanent (*Byrne* v. *Slauson*, 20 L. D. 43) nor are they of such a character as to be properly classified with natural objects as stable witnesses, a reference to which would at all times serve to identify the claim. In the judgment of the Land Department the public survey corners and mineral monuments were more certain and reliable guides.

In the wording of the grant, the fact that the field notes, together with other evidence, had been deposited in the Land Office, was mentioned by way of inducement merely, and, were they by this reference made admissible, it would follow that all of the proceedings in the Department are subject to inspection and review. The lot number is merely a convenient official name, given before the survey to the area applied for and ultimately patented. Whatever significance may be attached to it, it refers only to the lot as platted. And the petitioner did not see fit to put the plat in evidence, but sought rather to go back of both patent and plat to the field notes, in order to raise a latent ambiguity and then, by extrinsic evidence, to control them both. *Beaty* v. *Robertson*, 130 Indiana, 589; *Cornett* v. *Dixon* (Ky.), 11 S. W. 660; *Jones* v. *Johnston*, 18 How. 150; *Haley* v. *Martin*, 85 Mississippi, 698.

The Department had not, prior to the passage of the amendment, construed the law as authorizing the identification of patented areas by means of parol evidence of the positions of the survey stakes without regard to the calls in the patent. *Mono Fraction Lode Mining Claim*, 31 L. D. 121; *United States* v. *Rumsey*, 22 L. D. 101; *St. Lawrence Co.* v. *Albion Co.*, 4 L. D. 117; *Sinnot* v. *Jewett*, 33 L. D. 91.

Conceding the admissibility of the evidence, it is entirely insufficient to establish that the original survey posts were set 135.5 feet short of their reported positions.

*The Solicitor General, Mr. Assistant Attorney General Nebeker,* and *Mr. H. L. Underwood,* Special Assistant to the Attorney General, by leave of court, filed certain suggestions on behalf of the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the respondent, the Conkling Mining Company, in order to establish its right to a large body of ore found under the southwesterly 135.5 feet of its patent as laid out by courses and distances, and to obtain an account from the petitioner, which has mined the ore, making a claim of right on its side. The District Court dismissed the bill. The decree was reversed by the Circuit Court of Appeals. 230 Fed. Rep. 553. Thereupon a writ of certiorari was granted by this Court. 250 U. S. 655. A short statement will be enough to present the single issue that it is necessary to pass upon here. The only ground upon which the Conkling Mining Company stands is that the ore is within the lines of its patent extended vertically downward. If the patent properly construed does not cover the land in question the case is at an end.

The patent under which the Conkling Mining Company gets its title was granted to the Boss Mining Company and so far as material is as follows: It recites that in pursuance of the Revised Statutes, &c., there have been deposited in the General Land Office of the United States the plat and field notes of survey and the Certificate No. 1697 of the Register of the local land office with other evidence whereby it appears that the grantee duly entered and paid for that certain mining claim known as the Conkling lode mining claim, designated by the Surveyor General as Lot No. 689, "bounded, described, and platted as follows . . . Beginning at corner No. 1 a pine post four inches square marked U. S. 689 P. 1. Thence"

by courses and distances northwesterly "to corner No. 2, a pine post four inches square marked U. S. 689 P. 2," these two corners being undisputed. "Thence second course, south sixty degrees and forty-five minutes west one thousand five hundred feet to corner No. 3. Thence third course, south twenty-one degrees and nine minutes east six hundred feet to corner No. 4." It then grants "the said mining premises hereinbefore described" and all that portion of veins, lodes or ledges, "the tops or apexes of which lie inside of the surface boundary lines of said granted premises in said Lot No. 689" &c., with a proviso confining "the right of possession to such outside parts of said veins," etc., "to such portions thereof as lie between vertical planes drawn downward through the end lines of said Lot No. 689," &c.

If "corner No. 3" and "corner No. 4" are determined by courses and distances alone the Conkling Mining Company is entitled to prevail upon the question that we are discussing. The Circuit Court of Appeals was of opinion that the patent represented an adjudication by the Land Department that the lot was 1500 feet long and 600 feet wide without regard to the location of the other posts which the field notes showed to exist but the patent did not mention. The District Court on the other hand held that evidence was admissible to show that there were monuments at corners No. 3 and No. 4, held that the monuments so established prevailed, and therefore decided that the title of the Conkling Mining Company failed.

The decree of the District Court appears to us to be supported by the face of the patent and by consideration of the circumstances. If a draughtsman were determining his description by courses and distances only it seems unlikely that he would insert "corner No. 3" and "corner No. 4" where the direction changed, as it would add nothing to the change of direction in the boundary line. The

words by themselves suggest a reference to an external
object, an interpretation greatly strengthened by the fact
that the same phrase in the first two instances of its use
referred to one in terms; and coupled with evidence that
such an external object was found, the words at least tend
to prove that a monument was meant. Of course evi-
dence is admissible, if needed, to show that language is
to receive the interpretation that taken by itself it invites.
Furthermore the grant is of "the said mining premises
hereinbefore described," assumed in the same sentence
to be the lot designated by the Surveyor General as Lot
No. 689; and, when it is observed that it is the duty of
the Surveyor General to see that the lot is identified by
monuments on the ground, the presumption becomes
almost irresistible that "corner No. 3" and "corner No. 4"
mean corners determined as they are required to be
determined by the law.

One statutory foundation of a mining claim is that "the
location must be distinctly marked on the ground so that
its boundaries can be readily traced." Rev. Stats., § 2324.
To obtain a patent the claimant must file in the proper
land office along with his application "a plat and field-
notes of the claim . . . made by or under the direc-
tion of the United States surveyor-general, showing ac-
curately the boundaries of the claim . . . which shall
be distinctly marked by monuments on the ground."
(*Waskey* v. *Hammer*, 223 U. S. 85, 92.) He also must
file a certificate of the Surveyor General "that the plat is
correct, with such further description by such reference
to natural objects or permanent monuments as shall
identify the claim, and furnish an accurate description,
to be incorporated in the patent." Rev. Stats.; § 2325.
It is the reference to natural objects or monuments that
is to be incorporated. Before the application is filed
notice of it must be posted on the ground. The register
subsequently advertises the application in a newspaper,

&c;, and if no adverse claim is made and the other conditions are complied with the patent is granted. The notice is jurisdictional. *El Paso Brick Co.* v. *McKnight,* 233 U. S. 250, 259. Obviously therefore a patent car convey only the claim as to which notice has been given. A notice of an application for a patent of land determined by monuments cannot give priority to a junior location, such as was that of the Conkling Mining Company, in respect of land outside the monuments, to which adjoining claimants had no notice that the patent would purport to extend.

The final receipt from the local land officer fixed the claimant's rights. *El Paso Brick Co.* v. *McKnight,* 233 U. S. 250, 257. The failure of the subsequent patent to the Boss Mining Company, issued February 23, 1892, to describe the monuments at corners Nos. 3 and 4 was not an adjudication in favor of an inconsistent description but simply the following of a practice of abbreviating by omission that had been adopted by the land office in 1891, and which a few years later it was directed to discard. The Act of April 28, 1904, c. 1796, 33 Stat. 545, amending Rev. Stats., § 2327, making the monuments the highest authority to which inconsistent descriptions must give way, simply made more explicit or at most carried a little farther the previous policy of the law. We are satisfied that evidence that the field notes, as the regulations of the department required, showed marked posts at the third and fourth corners was admissible, and that witnesses properly were allowed to testify that they found posts upon the ground. The District Judge who saw and heard the witnesses was satisfied that they told the truth and thereupon rightly determined that the monuments so fixed controlled the courses and distances in the instrument evidencing the grant. See *Resurrection Gold Mining Co.* v. *Fortune Gold Mining Co,* 129 Fed. Rep. 668; *Grand Central Mining Co.* v. *Mammoth*

*Mining Co.,* 36 Utah, 364, 378, 379; *Foss* v. *Johnstone,* 158 California, 119, 128; *McIver* v. *Walker,* 4 Wheat. 444, 447, 448; *Heath* v. *Wallace,* 138 U. S. 573. We see no sufficient reason for disturbing the finding of the trial court upon the facts.

It may be that our decision will end this litigation. If not, our decree is made without prejudice to such further questions as may arise. We confine ourselves to the one here determined.

The petitioner besides applying for the writ of certiorari took an appeal, for greater caution. It is immaterial to the petitioner in which way the relief to which it is entitled is obtained. The appeal will be dismissed.

*Decree reversed.*

*Appeal dismissed.*

THE CHIEF JUSTICE took no part in the decision of this case.