## NORTHPORT SMELTING & REFINING CO. v. LONE PINE-SURPRISE CONSOL. MINES CO.

(Circuit Court of Appeals, Ninth Circuit.  February 6, 1922.)

No. 3691.

Mines and minerals ⬤⟳31(2)—"Discovery vein" determines the end and side lines of claim.

The discovery vein is the primary vein for the purpose of locating a mining claim and determining which are the end and which the side lines, and where the discovery vein crosses the opposite side lines of the claim as located, the side lines become end lines, not only with respect to such vein, but for determination of extralateral rights in any other vein which apexes within the claim.

---

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit in equity by the Northport Smelting & Refining Company against Lone Pine-Surprise Consolidated Mines Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 271 Fed. 105.

John P. Gray, of Cœur d'Alene, Idaho, and John H. Wourms, of Wallace, Idaho, for appellant.

Wm. E. Colby, of San Francisco, Cal., and Fred S. Duggan, of Spokane, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellant, the owner of the Lone Pine lode mining claim, asserted extralateral rights to ores beneath the adjoining Last Chance mining claim, and brought a suit against the appellee, the owner of the Last Chance, to quiet title to said ores and for an accounting and an injunction. The complaint alleged that the Lone Pine is senior to the Last Chance, and that within the Lone Pine is a vein known as the Black Tail vein, which enters the south end line, and passes out of the east side line, and dips in an easterly direction beneath the surface of the Last Chance, giving the appellant extralateral rights in the latter claim. The vein so referred to will be referred to herein as "vein No. 2." The complaint further alleged that about February 28, 1896, the appellant's predecessors in interest discovered another vein or lode within the boundaries of the Lone Pine, located a claim thereon, and posted a notice on said claim "at the point of discovery."

The appellee in its answer denied that the vein No. 2 is a continuation of the Black Tail vein, and alleged that the said vein No. 2 crosses the Lone Pine east side line, and crosses the claim, and goes out through the west side line. The court below found it unnecessary to determine whether the Black Tail vein was a continuation of vein No. 2, and denied the appellant's claim to extralateral rights under the Last Chance, on the ground that, owing to the location of the discovery vein of the Lone Pine, crossing the claim as it does at substantially right angles to the side lines, the side lines became end lines, and that therefore there were no extralateral rights beyond a perpendicular plane drawn through said lines.

The appellant does not dispute that the location notice was posted on what the court below held to be the discovery vein, and does not deny that that vein crosses the opposite side lines of the Lone Pine; but it contends that at the time of the location of that claim the Black Tail vein was known by the locators to exist within the Lone Pine, and that it aided discovery by them and contributed to the delineation of the lines, and that it was also a discovery or original vein, and gave to the locators the right to elect, between the two veins, which they would adopt for extralateral purposes; that there may be more than

one discovery or original vein in a claim, and that the point of discovery fixed in the location notice, or the point where the notice is posted is not controlling in determining whether a vein is the original vein, and if there is another vein, which is known at the time of the discovery and was intended to be covered by the location, and it is a primary or original vein, and passes through an end line, then the end lines are fixed as end lines for all veins in the claim.

We think that the court below committed no error in denying a locator's right to ignore the discovery vein, and to select another vein as the basis of extralateral rights. The mining statutes evidently contemplate but one vein as the discovery vein, and they provide that no claim shall extend more than 300 feet on each side of the middle of the vein at the surface. Section 2320, Rev. Stat. (Comp. St. § 4615). That the discovery vein is the primary vein for the purpose of locating the claim, and is the point of departure for the determination of the lines of the claim, is indicated, not only by the language of the statute, but by the decisions of the courts, the rulings of the General Land Office, and the opinions of the textwriters. Walrath v. Champion Mining Co., 171 U. S. 293, 306, 311, 18 Sup. Ct. 909, 43 L. Ed. 170; In re Helvetia Lode, Copp's Mineral Lands, 279; 2 Lindley on Mines (3d Ed.) 1399; Costigan on Mining Law, 440; Morrison's Mining Rights (15th Ed.) 215.

By the decided weight of the testimony in the case it was shown that the locators of the Lone Pine, at the time of making the discovery and locating the claim, did not know of vein No. 2, and first knew of its existence six days later. The statutes originally gave the locator only the vein which was the occasion of the location. Later the law was amended to give him all the veins which were found to apex within the surface lines of his claim. When, as here, the discovery vein crosses the opposite side lines, the side lines in contemplation of law become end lines (King v. Amy & Silversmith M. Co., 152 U. S. 222, 228, 14 Sup. Ct. 510, 38 L. Ed. 419; Silver King Coalition Mines Co. v. Conklin Mining Co., 255 U. S. 151, 41 Sup. Ct. 310, 65 L. Ed. 561), and the side lines become the end lines of all other veins which have their apices within the limits of the claim (Iron Silver Mining Co. v. Elgin Mining Co., 118 U. S. 196, 207, 6 Sup. Ct. 1177, 30 L. Ed. 98; St. Louis Min. & Mill Co. v. Montana Min. Co., 104 Fed. 664, 44 C. C. A. 120, 56 L. R. A. 725).

The appellant cites Clark-Montana Realty Co. v. Butte & Superior Copper Co. (D. C.) 233 Fed. 547, in which it was said:

"Neither the Jersey Blue nor the Rainbow is a secondary vein. Both are primary. The Jersey Blue overlaps the Rainbow. * * * That the Rainbow crosses both side lines is not controlling. There can be but one set of end lines, and if the located end lines fix extralateral rights upon one vein, as they do upon the Jersey Blue, they fix them upon all veins."

The Rainbow vein was the discovery vein of that claim. The construction so given to the law seems to be wholly unsupported by precedent, and we are constrained to believe that it runs counter to the intendment of the mining laws, as they are expressed and as they have

been construed by the Supreme Court and accepted in practice by the General Land Office.

It becomes unnecessary to consider the other questions in the case. The judgment is affirmed.