# CHARLESTON.

WILSON v. BRADEN *et al.*

Submitted June 14, 1904—Decided December 6, 1904.

1.  COPY OF OFFICIAL SEAL—*When Sufficient.*

    Where a copy of a deed is offered in evidence having a certificate of acknowledgment certified by the officer as under his·

official seal and the clerk in copying appends to such officer's official signature the word "seal," such word will be presumptively held to represent such officer's official seal, and such copy is properly admitted in evidence over such objection. (p. 374).

2.   ACKNOWLEDGMENT BY JUSTICE—*When Sufficient.*
The fact that a justice taking an acknowledgment signs the certificate as justice and alderman will not vitiate such certificate, but his official designation as alderman will be regarded as surplusage. (p. 375).

3.   ANCIENT DEED.—*Recitals as Evidence.*
Recitals of heirship and widowhood in deeds upwards of thirty years old under which possession has been continuously held are presumptive evidence of the truth of the same, and admissible against strangers to the title claiming adversely. (p. 375).

4.   ADVERSE POSSESSION.—*Burden of Proof.*
An adverse claimant of title under the statute of limitations must show actual, notorious, visible, open, continuous and exclusive possession for the statutory period, and his possession to be continuous must be such as will permit the superior claimant to sue him as a trespasser at any time during the period. Unless he makes out a *prima facie* case of such unbroken, continuous possession on demurrer to evidence, the judgment should be against him. (p. 378).

5.   ADVERSE POSSESSION.—*Wild Lands.*
There can be no adverse possession of wild lands as against a superior title unless such possession is actual, exclusive, visible, and notorious. A mere claim to possession accompanied by the occasional cutting of timber, the prevention of trespasses, the payment of taxes and the assertion of title is not sufficient, but it must be such occupation, use or holding of the property or change in its character, as will make such claimant during such statutory period continuously subject to be treated as a trespasser by the holder of the superior title constructively or actually in possession of such land. Such claim of possession does not amount to an ouster of the superior claimant. (p. 380).

Appeal from Circuit Court, Ritchie County.

Bill by Henry S. Wilson against George W. Braden and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

V. B. Archer, Wm. Beard, S. Robinson, and H. B. Woods, for appellants.

W. N. Miller, for appellee.

Dent, Judge:

Henry S. Wilson, plaintiff, obtained a writ of error from a judgment of the circuit court of Ritchie county in a suit in ejectment in favor of George Braden and Hester Deem, awarding them title to two certain tracts of land claimed by the plaintiff.

The case was here before, 48 W. Va. 196, and a judgment for the same defendants was reversed and a new trial awarded. A new trial being had, the plaintiff having proved his title, and possession thereunder and the defendants having set up possession under color of title for more than ten years, the plaintiff demurred to the evidence in which the defendants joined. On a conditional verdict the court found for the defendants, and gave judgment accordingly. It is now well established that on a demurrer to the evidence, the court will consider the whole evidence as though on a verdict in favor of the demurrees, and will not reverse the judgment unless the evidence is insufficient to sustain the same. *Bowman* v. *Dewing and Sons,* 50 W. Va. 446; *Lewis* v. *C. & O. R. R. Co.,* 47 W. Va. 656.

The first question that arises on demurrer is as to whether the plaintiff has made his title clear, either by a complete chain from the Commonwealth of Virginia, or by possession under color of title for the statutory period. If he has not done one or both of these, his demurrer was properly overruled. The plaintiff traces his title back to the commonwealth of Virginia through a patent issued by the Governor to William Tilton, assignee of Michael Ryan, dated August 4, 1785.

The first objection to plaintiff's title is that the copy of the deed from Charles E. Applegate and wife to Henry S. Wilson, has the word "Seal" after notary's signature to the acknowledgment, instead of some words to indicate it to have been his official seal. The notary certifies the certificate to be under his "official seal." The clerk in copying presumably considered the word "seal" sufficient to show that the official seal was affixed. In the case of *Miller* v. *Holt,* 47 W. Va. 10, this very objection

was considered and overruled, and rightly so, for the word "seal" must have been annexed to the notary's signature to represent his official seal, and not his private seal. The same objection is made to several of the title deeds, but it is untenable and was properly. overruled.

The objection is made to the certificate of acknowledgment to the deed of Ann Kemble, widow of Robert Kemble, because the same is signed by two officers in their double capacity of alderman and justice. The Code 1819, section 6, chapter 99, authorized the acknowledgment to be made before and certified by two justices of the peace. The word "alderman" can properly be regarded as surplusage, the words "Justice of the Peace" being in accordance with the law.

The next objection is to the two deeds in the chain conveying the title of Robert J. Kemble, deceased, one deed being from Ann Kemble, widow of Robert J. Kemble, dated 1843, and the other from Mary D. Summers, formerly Mary D. Kemble, wife and sole heiress of her father Robert D. Kemble, bearing date February 17, 1853, because there was no evidence other than the deeds to show that the one was the widow and the other the sole heiress to Robert J. Kemble, deceased. If these deeds were of modern origin, it would be necessary as against strangers to produce such evidence. 24 Am. & En. En. Law (2d Ed.) 60; *Wiley et al.* v. *Given et al,* 6 Grat, 276, 277, (Virginia Reports Anno. 722). But such is not the law as to ancient deeds, upwards of thirty years old, where possession has been continuously held thereunder. 24 Am. & En. En. Law (2d Ed.) 61; 2 Am. & En. En. Law (2d Ed.) 331; *Harmon* v. *Stearns,* 95 Va. 63; *Fulkerson* v. *Holmes,* 117 U. S., 389; *Deery* v. *Gray,* 5 Wall. 795; *Gaines* v. *Steles,* 14 Pet. 322; *Davis* v. *Pearson,* 6 Tex. Civ. Appl. 593; *Brown* v. *Simpson,* 67 Tex., 225. This is on the theory that if the recitals were untrue, they would have long since been disproved and time and possession has raised the presumption of their truth, admissible even against strangers. Ann Kemble's deed under the circumstances could only be admitted as conveyance of her dower interest in the land, but it was good for the purpose, although it recited therein another deed not produced, which might have conveyed to her some other interest. *Deery* v. *Gray,* 5 Wall. 795. Mary D. Summers' deed conveyed her interest in the land as the sole heir of her father,

Robert J. Kemble, deceased, and thereby the Kemble link in the title is made complete.

These being the only objections to plaintiff's chain of title, and they being without foundation, we must hold it good. It is strengthened by long-time actual possession of the land thereunder beginning as far back as the year 1860. If the plaintiff had only color of title by break in his chain as to the Kemble deed, still the actual possession of the property by those under whom he claims would have ripened into good title long before the Bradens set up a claim to the land awarded to them by the judgment, and also as to the Deem tract, unless Hester Deem or those under whom she claims had such adverse possession as ousted from possession those under whom plaintiff claims. This brings us to the main issue in this case.

Both defendants found their title to the separate tracts claimed by them under color of title and adverse possession for the period of ten years. The question then presented by the demurrer to evidence is as to whether the defendants or either of them have had such adverse, open, notorious, continuous and exclusive possession of either of said tracts of land under color of title for the period of ten years prior to the institution of this suit as will divest plaintiff's title and invest it in the claimant. *Hall* v. *Webb,* 21 W. Va. 324; *Adkins* v. *Spurlock,* 46 W. Va. 139; *Bicker* v. *Comstock,* 113 U. S. 149; *Dickerson* v. *Colegrove,* 100 U. S. 578.

First, as to the Geo. W. Braden interlock of about fifty acres. Plaintiff's predecessors had actual possession of this interlock with a portion thereof under cultivation down until the year 1879, when Ezekiel Braden after having surveyed this land, obtained the key of the house thereon from the tenant in charge, E. Bradley, and as he claimed in the former trial thereby obtained possession thereof. He afterwards tore down this house and removed it off. He did not disturb the Trembly and Daley fields included in the interlock, which had been cleared, fenced and cultivated by tenants under plaintiff's title. He allowed one Noland in 1881 or 1882 to erect a cabin and cultivate a small piece of ground in a remote corner of the interlock. After Noland moved off, he allowed one Patsey Jenkins to occupy the cabin during the year 1882. Jacob Riggs testifies that he bought fifty acres of land, including the interlock of defendant Braden during the year 1883, built a house there-

on outside of the interlock, tore down the Noland cabin, which had a clearing of about three-fourths of an acre, and cleared about three acres of land on the interlock, and cultivated it. He remained in the house about eighteen months. After that time down to the present time there has been no house upon or actual occupancy of the interlock, by the defendant Braden. Defendant Braden purchased the house from Riggs and took the land back. No title papers ever passed between them. In 1885 defendant Braden received a deed from his father, and moved into the Riggs house. The holder of plaintiff's title was at this time a non-resident of the state and occupying the land by tenants. The two fields on the land known as the Daley and Trembly fields remained practically unchanged. The Daley field was in part on the interlock and the residue extended over on plaintiff's other land. Defendant Braden claims to have farmed these fields some years. The rest of the land lay open with probably the exception of a small uncertain amount down at the Patsy Jenkins corner. When plaintiff purchased and surveyed the land in 1888, he found nobody in actual possession of the interlock. He saw the old Riggs' log house which was un-occupied and was not on the interlock. He saw also the Trem-bly field and although he was back and forth several years, thereafter, he saw no one on the interlock and knew of no one claiming it until he was informed that defendant Braden was cutting some timber on it. He immediately served a notice on him to stop trespassing, and instituted this suit. The evidence shows that defendant Braden was claiming this land prior to plaintiff's purchase. He cultivated some portions of it at dif-ferent times, and had cut some timber off of it. He never actu-ally occupied it. He never fenced it, and never changed the fences around the Trembly or Daley fields except he attempted to make some change in the fence around the Daley field a short time prior to the institution of this suit. At the time plaintiff purchased his alleged possession had not ripened into title. The manner in which this alleged possession was maintained seemed to be such as not to furnish the owners of plaintiff's title notice thereof. The building of the Riggs' house off of the land and leaving the land unenclosed and in the same condition gener-ally as it was when originally occupied by tenants under plain-tiff's title, are circumstances strongly against defendant Braden's contention. In the case of *Core* v. *Faupel,* 24 W. Va. 246, it

is held: "If the land is of a character to admit permanent useful improvement, the possession must be kept up during the whole statutory period by actual residence or by continued cultivation or enclosure. Surveys, cutting wood, occasional occupancy with payment of taxes will not do. Where there are several adverse possessions, they cannot be tacked together so as to effect a bar or ouster of the title of the owner, unless the several occupants claim in privity, and there was no break in the succession of the one to the other. The possessory estates must be connected and continuous." "Unless the adverse claimant is so in possession of the land that he may at any time be sued as a trespasser, the statute will not run in his favor; and although he may have taken actual possession, if he does not continue there so that he may be sued at any time as a trespasser during the prescriptive bar, he cannot rely on the statute of limitations." "The moment the premises become vacant, that moment the owner, by reason of his legal title will be regarded in the constructive possession and the adverse possession of the wrong doer is at an end." The plaintiff when he purchased found the premises entirely vacant and for more than five years therafter, he never found any one in possession of the premises whom he could treat as a trespasser. Even prior to that time the possession is not shown to be continuous. The defendant did not have it enclosed, did not live on it, did not cultivate it except occasionally cropped a portion of it, and cut some timber off of it. His occupancy therof in any manner was intermittent. No time after the plaintiff purchased had he noticed by the defendant's actual occupancy thereof in such manner that he could have brought suit against him as a trespasser until just before this suit was brought. The defendant has wholly failed to show such continuous possession of the land that the law requires. His evidence on the subject of possession is that in 1879 his father surveyed the land, got the key to the house thereon from a tenant in possession under plaintiff's title, tore down the house and moved it away. Afterwards at a time made uncertain by the evidence, being from 1879 to 1882, one Nolan built a little cabin on a remote corner of the land and lived there for about a year. After he left Patsy Jenkins moved in the cabin. How long after is not shown. She was put off by defendant Braden after he bought the land. He says she was there about one year. After she left, no one had actual

possession of the land until Jacob W. Riggs built a house on the
Braden land outside of the interlock in 1883. He says he went
there in September, 1883, and left in March, 1885. He cleared
about three acres on the interlock and raised a crop, including
a crop of corn on the Trembly field. After he moved out of his
house, how long after it is not shown, defendant Braden moved
in it. He fails to show that he took actual possession of the
land when Riggs moved out, nor does he show when he moved
out of the house. He says he farmed the land in 1885. There
is no positive evidence of any actual occupation of the land
during the years 1886, 1887 and 1888. The plaintiff purchased
in 1888, and on surveying the land found no one in occupation of
the interlock adversely to his tenants, and the Riggs house
was vacant and in a dilapidated condition. This evidence of
plaintiff is not contradicted. The years 1886, 1887 and 1888
form such a break in the continuity of defendant's possession
that if it had not been continually broken before, would permit
the intervention of plaintiff's possession and prevent the run-
ning of the statute. For it is not shown that there was any
one in such actual adverse possession of the interlock during
this period that plaintiff could have at any time sued such
person as a trespasser. Defendant testifies that he thinks that
in 1889 he rented the land to Lee Roberts, who lived there
about one year. After that, when it is not shown, he thinks
Marion Deem was there about one year. George Deem he also
thinks lived in the Riggs house. He does not know when, and
that Ben Harris lived on the land at an uncertain time. After
Deem he put Joshua Haught in possession of the land. Joshua
Haught says he moved in the Braden house on the 26th of
March, 1895, and stayed there until the 10th of March, 1897.
He says he rented the improved ground, and put the Daley field
and Cove fields in corn and oats. His occupancy was just before
and after the suit was brought. The actual, open, notorious,
visible and continuous possession of the land during the years
1892, 1893 and 1894, by Braden or his tenants is not sustained
by the proof. The interlock undoubtedly during those years
was in the constructive·possession of the plaintiff either for all
or some period of the time. "Upon every discontinuance of the
possesion of the wrong doer, the possession of the rightful owner
is by operation of law restored, and nothing short of an actual
adverse and continuous possession for the statutory period can

destroy his right or vest title in the wrong doer." "It is there-
fore absolutely necessary that the adverse occupancy shall be
*continuous,* open, visible and exclusive in order to effect a bar
·of the title of the true owner." *Core* v. *Faupel,* 24 W. Va. 246
and 247. The defendant Braden has wholly failed to show by
his evidence that he had actual, continuous, open, visible and
·exclusive possession of any portion of the interlock for any
period of ten consecutive years such as would have enabled the
plaintiff or those under whom he claims to have sued him at
any time as a continual trespasser. There are many both great
and small breaks left by his evidence in the continuity of his
possession, while there is no break in ·the continuity of plain-
tiff's constructive or actual possession, except when interrupted
by Braden's actual occupation of some portion of the interlock.
It continually hung over the land, and whenever there was a
break in Braden's occupation, it covered the land completely,
cutting into and destroying the continuity of Braden's pos-
·session. *Parkersburg Industrial Co.* v. *Schultz et al.,* 43 W. Va.
470. Such being plainly the law, the court erred in not sus-
taining the demurrer to the evidence.

Nor is Mrs. Deem's evidence on demurrer any more satisfac-
tory than her co-defendants. Her counsel claim that the suit
by the plaintiff admits her adverse possession at the time of the
·suit. This does not necessarily follow as a conclusion of law.
For such suit may be maintained against one not in possession,
but who may be exercising acts of ownership on the land in
·dispute or claiming title thereto. Code, chapter 90, section 5.
Under plaintiff's title, constructive possession was held under
·the patent from 1785, until the possession became actual by
occupancy about the year 1860. To destroy possession, actual
·or constructive under plaintiff's title and the transference of
such title to her, it devolved upon the defendant Deem to prove
:actual occupancy of the interlock, or else the use and enjoyment
thereof by acts· of ownership equivalent to such actual occupa-
tion. *Taylor's Devisees* v. *Burnsides,* 1 Grat. 165; *Overton's
Heirs* v. *Davisson,* 1 *Id.* 211; *Garrett* v. *Ramsey,* 26 W. Va.
345. It is admitted that the land in the Deem interlock is
·still wild and uncultivated, and has never been in the actual
·occupancy of any one. Defendant to sustain her contention
proved the payment of taxes, the cutting of timber, not habitual,

but at different times, the prevention of others from cutting timber, with slight notice of claim of title to agents of the superior title now dead. In *Taylor's Devisees* v. *Burnsides,* 1 Grat. 207, it is said that "Payment of taxes, prohibition of trespasses, surveys of the land, sales and conveyances of it, though they may serve to show a claim of title, are not evidence of actual possession." Even the cutting and selling of timber by the tenant himself, or by his authority, is but a transient trespass, unless habitual. *Konier* v. *Rankin,* 11 Grat. 420; *Paisley* v. *English,* 4 Grat. 141. And a sale of part of the land gives the vendor no possession of the residue. Nor is the fact that the superior claimant had notice of such acts sufficient to give actual possession, where such possession does not in fact exist. Negligence on the part of the superior claimant cannot make that actual possession which would not be without such negligence. Actual possession depends on the acts of the junior claimant and not on things left undone by the senior claimant. Such acts must be such as changes the condition of the land from a wild to an enclosed or cultivated state, and so continuous in their nature as would enable the superior claimant to proceed against the inferior claimant as an actual trespasser at any time during the statutory period. *Core* v. *Faupel,* 24 W. Va. 246; *Parkersburg Industrial Co.* v. *Schultz et al.,* 43 W. Va. 470. Mrs. Deem has come far short of showing actual, open, notorious, visible, continuous and exclusive possession, such as is sufficient to overcome either the actual or constructive possession of plaintiff, and those under whom he claims, and while it would be a matter of pleasure to decide in favor of a poor woman fighting for her home, as against a rich railroad magnate, the law directs a contrary decision.

The judgment is reversed, the plaintiff's demurrer to the evidence is sustained, and judgment will be entered for the plaintiff on the conditional verdict of the jury.

*Reversed.*

ON REHEARING.

Before the law will take from one land owner his superior title, and confer it upon a junior claimant by virtue of adversary possession under the statute of limitations, it requires that such junior claimant establish by positive evidence, such adverse possession to have been actual, open, notorious, exclu-

:sive and continuous for the statutory period of ten years. No mere acts of trespass or temporary occupancy for the purposes of felling timber and cultivating patches of ground, with intervening lapses of no occupancy, unaccounted for, will satisfy :such requirement of the law.

If the defendant, George W. Braden had enjoyed such uninterrupted possession, his evidence alone should have been sufficient to have established a *prima facie* case, whereas it is wholly insufficient for this purpose. For the period of ten years that he claims to have owned and had possession of the interlock, there was no building or other house upon it. The Riggs house, which was shown to have been occupied at various times by himself and tenants, is entirely outside of the interlock, and there is not shown to have been any continuity of possession even as to this. Because it is shown to have been occupied at various times, the court is asked to infer that it was occupied all the time, although the evidence wholly fails to show any connection between the occupancy of the various alleged tenats. This is pure guess work, and not just, legal inference.

So that George W. Braden's testimony proves the weakness of his case, and clearly establishes the fact that his possession, whatever it may have been falls far short of the just requirements of the law. He testifies that while he lived in the Riggs house, which was off the interlock, he only tried to cultivate the Trembly field within the interlock one year. "The land was too poor, and didn't bring anything." This shows plainly why nobody lived upon and cultivated the interlock continuously, and this was because the land was too poor, and would not bring anything. No doubt the house was built purposely off of the interlock to prevent its being included therein, and yet the main part of the defendant Braden's evidence, and the reliance of his counsel relate to the possession of this house, and not to actual occupancy of any portion of the interlock. The plaintiff, who is not contradicted, testifies that he purchased the land in 1888, had it surveyed the following spring. That would be in 1889, and in a year or two afterward, had it surveyed by John Cain, that there was no house on the land, but that there was an old house off of it a considerable distance. "There is an old log house there at this time, but there is nobody occupying it. It

is in a dilapidated condition." This undoubtedly refers to the time when he was at and saw the house, although it may have included the time of the trial of the suit. He further says he saw nobody occupying or farming the land at any of the various times he was on or over it, and knew nothing about defendant's claim of trespassing until shortly before the institution of this suit. It seems to me that the evidence clearly shows that George W. Braddon had some notion at one time of claiming the land, but having robbed it of its timber, and found it too poor to raise anything, he abandoned it as not worth the trouble, but after it was about to be developed for oil by the plaintiff, he began again trespassing upon it for the purpose of renewing his claim thereto. The same may be said as to the Hester Deem tract. The proof of neither of the claimants is of that strong, unbroken character that will justify the law in divesting plaintiff of his title to the land in controversy and vesting it in the defendants. If defendants' evidence had been sufficient, the labors of counsel would have been greatly simplified. Good argument cannot strengthen defective evidence. The former opinion is adhered to fully and confirmed.