## CHARLESTON

### STATE *v.* MOORE *et als.*

Submitted February 13, 1912.    Decided November 12, 1912.

1. PUBLIC LANDS—*Application to Sell State Lands—Reference.*
   In a suit by the State, pursuant to chapter 105, Code 1906, to sell its waste and unappropriated lands, it is not error to refer the cause to a commissioner, before proof of the allegation of the bill, although defendants and claimants have filed answers alleging title in themselves and denying that the land proceeded against is waste and unappropriated, particularly where the answers are not specific, or are equivocal, and the boundary lines are doubtful, or in dispute, and a survey and report is necessary to locate the land.   (p. 286).

2. ADVERSE POSSESSION—*Title to State Lands.*
   The actual continuous possession under color or claim of title, and payment of taxes, required by section 3, Article XIII, of the Constitution, and section 6, of chapter 105, Code, to transfer the State's title to lands must be actual, visible, notorious and continuous, not uncertain and desultory, as by occasional trespasses, prevention of trespassing by others, cutting cf timber, payment of taxes, &c.   (p. 291).

Appeal from Circuit Court, Tucker County.

Bill by the State against John H. Moore and others.  Judgment for the State, and defendants appeal.

*Affirmed.*

*W. B. & E. L. Maxwell,* and *A. Jay Valentine,* for appellants.
*D. E. Cuppett,* and *Chas. D. Smith,* for appellee.

MILLER, JUDGE:

Proceeding according to chapter 105, Code 1906, the State in November, 1909, filed its bill in the circuit court of Tucker County to sell for the benefit of the School Fund, a tract reported by the Commissioner of School Lands as waste and un-

appropriated land, lying partly in Tucker and partly in Ran-
dolph Counties, and described by metes and bounds as contain-
ing 610 acres, more or less. This bill made C. W. Maxwell,
John H. Moore, Haymond Hansford, and Christian Felty, trus-
tee, claimants of the land, defendants thereto.

The sufficiency of the bill, which we think good, was chal-
lenged by demurrer, and defendants also answered. On filing
their answers defendants moved an immediate submission of the
cause for final hearing; but without formal action on this
motion, the court below, without objection, deeming it a proper
case, referred the cause to a commissioner, with direction to
report upon the several subjects of inquiry required in the order.

It is contended here, on behalf of defendants, appellants,
and as ground for reversal, that it was error to have so referred
the cause, before proof by plaintiff of the allegations of its bill,
and a decree adjudging it entitled to the relief prayed for.
We think there is nothing of merit in this contention. In the
first place the denials in the answer are not of that specific
and unequivocal character to show clearly that plaintiff was not
entitled to relief. For instance, the bill charges that the deed
from Stark L. Baker, Commissioner, December 3, 1900, on
which defendants rely as source of title to the main body of
the land, does not cover any part of the land in controversy,
but describes land located in a different locality than that pro-
ceeded against. As the case was presented by the pleadings
and exhibits it was utterly impossible for the court, without a
reference to a commissioner, and a survey and location of the
lands provided for, to adjudicate the rights of the parties.
Lines and boundaries are uncertain. The true location of the
line between Randolph and Tucker Counties, and whether any
of the land proceeded against was located in Tucker County,
so as to give the court jurisdiction, was controverted, and a
survey was necessary to settle that fact. So a reference was
proper for this as well as other reasons, according to general
rules governing courts of equity. *State* v. *King,* 64 W. Va. 546,
point 6; *State* v. *Jackson,* 56 W. Va. 558. Morever, section 8,
chapter 105, Code, and sections 9 and 10 of the same chapter,
seem to contemplate an order of reference in all proceedings
under this chapter, not only to enable the court to determine

whether the State has land subject to sale, but that the notice provided therein may be published and posted, so as to bind all parties and all unknown owners or claimants of any tract or part of a tract proceeded against. See *Yokum* v. *Snyder,* 42 W. Va. 357, 358. Defendants, without objection, appeared before the commissioner, took testimony in support of their defenses, and cross examined plaintiff's witnesses, and by exception to the commissioner's report, for the first time made the point that the reference was premature and erroneous.

Of the 610 acres, more or less, proceeded against, the commissioner found, and the court decreed, that after deducting lands owned by defendants and others, to which good title had been acquired, there remained subject to sale as waste and unappropriated land belonging to the State, 308.61 acres, which should be sold for the benefit of the school fund. Defendants, Moore, Maxwell and Felty, trustee, have appealed.

In their answer to the bill defendants rely solely, as source and color of title, first, on a deed from Valentine, special commissioner, made June 22, 1901, pursuant to a decree of confirmation of prior date, alleged to cover 79 95/160 acres; second, a deed from Stark L. Baker, commissioner of school lands, to J. H. Moore, December 3, 1900, describing by metes and bounds a tract containing 1,000 acres; and third, two deeds, one made by said Moore to defendant Maxwell and N. A. Moore, jointly, about January, 1902; the other by said N. A. Moore, reconveying to his grantor, his interest in the land described in the first deed, both deeds describing the land purporting to be conveyed by identically the same boundaries as those recited in the bill describing the tract proceeded against. Respondents Moore and Maxwell allege in their answer that on July 20, 1907, they conveyed all their interest in said land to Christian Felty, trustee, and that they have no interest therein except as vendors for the lien retained for the purchase money.

The decree of sale, following the commissioner's report, eliminates the 79 acre tract, claimed by the defendants, and no part of that tract is decreed to be sold. It is clearly shown by the evidence before the commissioner, and the report of the surveyor filed therewith, that the deed from Stark L. Baker, commissioner, to Moore, covers no part of the land decreed to be

sold. According to the evidence taken before the commissioner the land described in that deed is situated in Dry Fork District, more than ten miles from the land proceeded against, and it is not seriously contended here by counsel for appellants that that deed gives color or claim of title to the land decreed to be sold. On this appeal counsel for appellants rely mainly, on the deed from John H. Moore to Maxwell and N. A. Moore, of January, 1902, and the reconveyance of N. A. Moore to J. H. Moore. But neither the originals nor copies of these deeds, *inter partes,* were exhibited with the bill or answer, or before the commissioner. The general replication of the plaintiff put in issue the fact of the existence of such deeds and the land purporting to be conveyed thereby.

To defeat the State's suit, defendants rely upon color and claim of title, possession, and payment of taxes for a period of five years, and transfer of the State's title, by virtue of section 3, Article 13, of the Constitution, and section 6, of chapter 105, Code 1906. Of the three classes of persons favored by the constitution and statute, it is clear from the record that appellants do not fall within the first class, for they do not show color and claim of title for ten years. We think the evidence does show that they paid taxes for five consecutive years, as contemplated by the statute; but they do not show, as they must to bring themselves within that class, that they had actual continuous possession of the property under color or claim of title for the period of ten years. The deed from Baker, commissioner, would not do for time, as that deed was made December 3, 1900, and this suit was brought in November, 1909; and ten years possession is not proven or claimed. Besides, this deed does not cover the land in controversy. Nor, for the same reason, will the alleged deeds, *inter partes,* of January, 1902, give color or claim for the requisite period.

It is substantially conceded also that defendants do not fall under the second class covered by the constitution and statute, for they showed no title regularly derived mediately or immediately, from or under a grant from the Commonwealth or of this State. Conceding that the Baker deed would amount to a grant of State's title, a fact not conceded, it does not cover

the land, and of course would not amount to a grant of the Commonwealth's title to the land in controversy.

The strongest case made by appellants is under the third, or last class of favored persons. All that was required to put them under that class was that they should have had claim to and actual continuous possession of the land, under color of title, for any five successive years, after the year 1865, and have paid all the taxes charged and chargeable thereon for that period. We are of opinion that the deed from J. H. Moore to Maxwell and N. A. Moore, and by the latter to J. H. Moore, furnished color of title for the requisite period; but actual continuous possession thereunder for five successive years was a pre-requisite condition to the transfer of the State's title. Was such possession shown? This is the pivotal point in the case. The constitution and statute require actual continuous possession. Such possession is denied by the bill. In reply to this charge, defendants in their answer say: "That during the year 1902 that a man by the name of Summerville lived on these lands and during the years 1903 and 1904 that D. P. Hansford lived on them and since that time up until the present date, Haymond Hansford has had actual, open, notorious and exclusive possession of the same. That ever since they have owned these lands, respondents have had a party living on the same and have had parts of the same under cultivation. Respondents, however, say that no part of the 79 acres, which is all the land they own in Tucker County or have any claim to, has ever been under possession, except that they have had a tenant to look after the same and keep away trespassers." Here is an admission of no actual possession upon the 79 acre tract. Moreover, the alleged possession of Summerville, in 1902, and of Hansford, during 1903 and 1904, is not alleged to have been under appellants. The allegation that Hansford had actual, open, notorious and exclusive possession after the year 1904, falls short of the requisite elements. But what are the facts about the possession? The commissioner on the evidence before him found against the appellants. They have excepted to his report. The evidence of the witnesses before the commissioner, including appellants themselves, is quite indefinite and uncertain. Appellants seem to have relied mainly

on the alleged possession of H. L. Hansford. When asked about this alleged possession, John H. Moore testified, that H. L. Hansford had general charge of all the property; that Byer Johnson had a written contract as to a part of it to clear some land; and that one C. N. Summerfield had a contract and lived on the property, had a garden on it; that both had written contracts; that Johnson died, but he did not know that he had ever lived on the property. The time and place of the alleged possession by Summerfield is left uncertain. He also refers to some possession by one Rennix, which the evidence shows or tends to show was at or near the mouth of Nail Run, but the actual time and place of this possession is not clearly shown. The evidence tends to show that Johnson, who died, had bought from a school board, an old log school house, located at some point on the land, and that through Hansford, perhaps, Moore had bought out Johnson; but no land was purchased, simply the old school house; and there was some attempt to show possession by Hansford by having him lock up the school house, but there was no other actual possession of the school house shown, except that Hansford swears that at some time, not definitely stated, he admitted some pulp wood people to occupy the school house, but for how long it is not shown. Hansford never lived on the land in controversy. Sometime after the year 1903, the testimony shows, or tends to show, Hansford and appellant had some sort of transaction by which, for a right of way over his land, appellants conveyed to Hansford a certain boundary extending over on to the land in controversy, but the deed, if one was made, is not produced. The boundaries are not defined, and Hansford swears that outside of his alleged possession of the school house, and the cutting of some brush, and general oversight, he had no other possession. Reference is made by Maxwell and Moore to purchases of certain boundaries from other persons, adjoining or near to the land in controversy, but not within its boundaries. They swear that after the purchase of these lands they had a survey made in 1903, and had them all included within one boundary, but no survey or deed is produced. The tax receipts produced show payment of taxes for 1902 and 1903, on 815 95/100 acres on the waters of Shaver's Fork; for 1904 and 1906, on 650 acres on

the waters of Shaver's Fork, and 130 acres on Clifton Run.
The tax receipt for 1905 was not produced. Reduction in acreage on the waters of Shaver's Fork is explained by appellants
by the fact that in the survey of 1903 they disclaimed and cut
out certain undesirable lands.

Is this character of evidence of possession sufficient to overthrow the finding of a commissioner and the decree appealed
from? We think not. Before the State can lose its land the
claimant must at least show a clear right by the actual continuous possession and payment of taxes for the required period.
Support of appellants' contention is sought in *State* v.
*Harman,* 57 W. Va. 447, point 11 of the syllabus. That point
of the syllabus is: "Actual possession within one of two or
more adjoining tracts of land of the same owner is possession of all of them." But the trouble about this position is,
that the evidence does not clearly show actual continuous
possession for the required time of any adjoining tract or
tracts. There was no survey of the adjoining tracts of which
possession is claimed, nor .is the point and time of possession
definitely located and fixed. The burden was certainly upon
the appellants. Besides, it may be questioned whether the
principles in the *Harman Case* had application here. The facts
are different. But we do not decide this point. It is unnecessary. Clear proof of such possession has failed.

What is meant by actual continuous possession, within the
meaning of the constitution and statute? Does the uncertain
desultory kind of possession proven in this case answer the requirement? We think not. Our decisions say that surveys,
cutting wood, occasional occupancy, with payment of taxes will
not do. *Core* v. *Faupel,* 24 W. Va. 246; *Oney* v. *Clendenin,*
28 W. Va. 35. In *Wilson* v. *Braden,* 56 W. Va. 372, 49 S. E.
409, it was said: "A mere claim to possession accompanied by
occasional cutting of timber, the prevention of trespasses, the
payment of taxes and the assertion of title is not sufficient, but it
must be such occupation, use or holding of the property or
change in its character, as will make such claimant during such
statutory period continuously subject to be treated as a trespasser."

We do not think appellants have brought themselves within

the rule of these cases, as to actual and continuous possession, and our opinion is to affirm the decree.

*Affirmed.*