EWART et al. v. SQUIRE.

(Circuit Court of Appeals, Fourth Circuit. December 2, 1916.)

No. 1381.

1. BOUNDARIES ⬥3(1)—DESCRIPTION—RELATIVE IMPORTANCE OF CONFLICTING ELEMENTS.

In ascertaining the boundaries of a tract of land, the guides in the order of importance are: (1) Natural objects; (2) artificial objects; (3) adjacent boundaries; (4) courses; (5) distances; and (6) quantity—but the rule is flexible, and does not control against the intention of the parties as shown by the description taken as a whole, and the order of im-

portance is more flexible when the description of subdivisions of a tract is ascertained by protraction and not by actual survey.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3, 5; Dec. Dig. ☞3(1).]

2. ADVERSE POSSESSION ☞16(1)—NATURE AND REQUISITES—ACTUAL POSSESSION.

Under the law of West Virginia the building of a small house on a tract of land by a claimant, in which he kept some tools, but which he never occupied, the cutting of a few saplings, and the occasional burning of brush do not constitute adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 82, 83, 87, 88; Dec. Dig. ☞16(1).]

3. PUBLIC LANDS ☞186—GRANTS OF STATE LANDS BY VIRGINIA—EFFECT OF FORFEITURE FOR NONPAYMENT OF TAXES.

Under the law of Virginia in force in 1840, the forfeiture of land for nonassessment and nonpayment of taxes under a senior grant transferred the title to the junior grantee of the state against whom the land was assessed, and by whom the taxes had been paid for 5 years only when the claimant under the junior grant was in possession.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 599; Dec. Dig. ☞186.]

4. PUBLIC LANDS ☞186—LANDS FORFEITED TO STATE—TRANSFER OF TITLE.

Under the tax statute of West Virginia as construed by its highest court, each separate tract of land must be returned and assessed as an entirety, and, if any undivided interest is left off and not charged with taxes for 5 years, the omission operates as a forfeiture of the entire land, and under Const. W. Va. 1872, art. 13, § 3, and Code W. Va. 1913, c. 31, § 40 (section 1099), the title passes to a claimant under a junior grant as by adverse possession who has paid the taxes thereon for 5 years.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 599; Dec. Dig. ☞186.]

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Ejectment by Andrew Squire against Harvey Ewart and C. L. Parker, administrators of the estate of James A. Parker, deceased, and James T. McCreery. Judgment for plaintiff, and defendants bring error. Affirmed.

William H. Sawyers, of Hinton, W. Va., and H. M. Patterson, of Beckley, W. Va. (T. N. Read, of Hinton, W. Va., on the brief), for plaintiffs in error.

J. Lewis Bumgardner, of Beckley, W. Va., and W. R. Thompson, of Huntington, W. Va. (J. J. Divine, of Welch, W. Va., and Z. T. Vinson, of Huntington, W. Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The only question now made in this action of ejectment is whether the district judge erred in directing a verdict in favor of the plaintiff for the land in dispute.

The declaration covered 31,633 acres, but the defendants disclaimed title to all the land described therein except a tract of 750 acres. They claim this tract under a grant of the state of Virginia to Thomas Rutter and Reuben Etting for 174,673 acres, dated January 9, 1796. The

plaintiff claims under a junior grant of 90,000 acres to James Welch, dated February 11, 1797. The proof was that both grants covered the land in dispute, and that the plaintiff has a complete chain of title from Welch. The plaintiff asserts that the evidence shows conclusively: (1) That neither of the defendants, nor those under whom they claim, ever acquired title or held possession of any part of the land under a senior grant; (2) that if the defendants, or those under whom they claim, acquired title under the senior grant, either by conveyance or adverse possession or both, it was forfeited for nonassessment and nonpayment of taxes, and under the laws of the state of West Virginia the title so forfeited inured to the plaintiff as a holder of the title under the junior grant from the state, who had paid taxes for five years.

The first question, then, is whether the defendants ever acquired title under the senior grant. On December 15, 1840, the whole of the tract of 174,673 acres covered by the senior grant was sold as land forfeited for taxes by Alfred Beckley, commissioner of delinquent and forfeited lands. Before the sale the land was divided into 28 lots. Lot No. 2 was purchased by Wilson Abbott, and the conveyance was made to him November 10, 1842. The defendants claimed from Wilson Abbott under this deed, and the issue of fact is whether the land in dispute was embraced in it.

[1] In ascertaining location the guides in the order of importance are: (1) Natural objects; (2) artificial objects; (3) adjacent boundaries; (4) courses; (5) distances; (6) quantity. But the rule is flexible, and it does not control against the intention of the parties as shown by the description taken as a whole. Ruffner v. Hill, 31 W. Va. 428, 7 S. E. 13; Lewis v. Yates, 62 W. Va. 575, 59 S. E. 1073; White v. Luning, 93 U. S. 514, 23 L. Ed. 938; Watkins v. King, 118 Fed. 524, 55 C. C. A. 290; Mylius v. Raine-Andrew Lumber Co., 69 W. Va. 346, 71 S. E. 404; Tolley v. Pease, 72 W. Va. 321, 78 S. E. 111; McClure v. Glady Ford Lumber Co., 183 Fed. 76, 105 C. C. A. 368. The order of the importance of the guides is manifestly the more flexible when the description of subdivisions of a tract is ascertained by protraction and not by actual survey.

For the purposes of the sale the exterior lines of the original tract, embracing 174,673 acres, were actually surveyed, the courses and distances being given, and the mile and half-mile stations indicated by trees numbered on the plat. The separate tracts were not surveyed but laid out by protraction. Within the boundaries of the old grant were several tracts excluded from the sale because the titles to them in other persons were considered to be superior to the grant of 1796. These were indicated on the plat, but it does not appear that they were actually surveyed. One of these tracts was the Preston survey of 2,500 acres, the natural marks, boundaries, courses, and distances of which were known and recognized; and they are now acknowledged to be binding on the parties to this controversy. The first call on the deed from Beckley, commissioner, to Wilson Abbott, under whom defendants claim, is:

"Beginning at the twenty mile tree south line of the original survey; then N. 10 W. 190 poles to the two white oaks and a red oak, corner of Preston's 2,500 survey."

Comparison of the map by which the sale was made with the resurveys made for the purposes of this case shows beyond doubt that Beckley was mistaken either as to the location of the 20 mile tree called for in its relation to the Preston survey, or as to the location of the Preston survey, and that the map by which he sold is incorrect in that respect. He either thought the 20 mile tree farther east than it was, or the Preston survey farther west than it was. It is admitted, however, that the eastern lines of tract No. 2 must conform to the lines of the Preston survey for which it calls by known marks, courses, and distances. The line N. 10 W. 190 poles from the 20 mile tree or station as ascertained does not go near the known corner of the Preston survey, but if the known and recognized corner of the Preston survey, for which the deed calls, be taken as a starting point and the call reversed to ascertain the point Beckley meant by what he called the twenty mile tree, and the other courses and distances called for by his description of tract No. 2 followed, the result is a tract of land for No. 2 which corresponds in shape, course, distance, and area with that tract as laid down on the old map. It corresponds also with the understanding of Abbott as to his purchase as indicated by the descriptions in his resales of the tract in several portions. What is, perhaps, more significant it corresponds closely with the distance called for in the southern boundary of adjacent tract No. 1, the description of which called for the 20 mile tree as the southwest corner. Had Beckley's mistake been in supposing that the Preston survey was farther west than it was, this would not have been the case.

On the other hand, it is contended by defendants that all this should be held to be overcome and the location controlled by the description in the forfeiture proceedings, which places the 20 mile tree 200 poles west of Guyandotte Mountain, and the designation of it on the old map as west of the mountain, whereas the location of the tract as contended for by the plaintiff would place the 20 mile tree east of the mountain. From this location of the 20 mile tree the defendants contend that by reversing the call of the last line 480 poles the southwest corner is ascertained. To correspond with this it is reasoned that the northern line of the tract described in the deed as 145 poles should be correspondingly lengthened to 573 poles; or, if not, then the course and distance of the western line should be disregarded, and the western line run from the last call of the deed on the northern line to the terminus of the southern line as contended for by the defendants. It is only by this reasoning that the land in dispute can be made to fall into tract No. 2. In further support of this conclusion the defendants rely on the fact of the assertion of title to the disputed land by George Snuffer claiming under Abbott, his undertaking to convey the land to Azel Ford in 1892, some acts of Snuffer indicating possession, and successive conveyances from those deriving title under Snuffer, including the conveyance to the defendants. Reliance is also placed on the fact that the Beckley map indicates that the boundary between tracts 2 and 3 was at or near the 18½ mile tree, and on the evidence that it was considered by the community to mark the boundary between tracts 2 and 3.

It will be observed that the defendants' theory that the present location of the 20 mile tree is controlling requires that the course and distance from the 20 mile tree to the known corner of the Preston survey, the length of the northern line, the location of the Preston survey on the map, the shape of tract No. 2 on the map, and the length of the southern line of tract No. 1 should be disregarded, and that the area of tract No. 2 should be increased over 1,000 acres, and that too, although the 20 mile tree could not be found and the evidence of Beckley's mistake as to its location seems to be convincing. The deed does not call for the 18½ mile tree and therefore the course and distance cannot be varied to carry the western line to that point.

While it is impossible to reconcile all discrepancies, the plaintiff's location is made out so clearly that we do not think there is ground for any reasonable difference of opinion. It reconciles all proved marks, corners, courses, and distances set out in the deed, except the location of the 20 mile tree. The call for the 20 mile tree is not sufficient to overturn so many strong evidences of the intended location as contended for by the plaintiff. That location is consistent too with the shape of the map and with all areas called for, except that of tract No. 3, which is not described by metes and bounds. All these points of agreement leave little room to doubt that the intention of the grantor was not to include the land in dispute, and his intention, gathered from the entire transaction, governs. It follows that the conveyance by the commissioner of tract No. 2 did not include the land in dispute, and therefore conferred neither title nor color of title on the defendants' grantor, Abbott, and that no adverse possession of defendants or their grantors of any portion of tract No. 2 could avail as adverse possession under this deed as title or color of title to the land in dispute. It follows also that there was no presumption of possession in the defendants, since they had no title.

[2] But the defendants contend that, even if it be true that the land in dispute does not lie within the boundaries of the tract conveyed by Beckley, commissioner, as tract No. 2, nevertheless they have proved sufficient adverse possession under color of title derived in a different way. The other color of title relied on begins with a conveyance from George Snuffer to Azel Ford September 18, 1892, and continues by successive conveyances to defendants. This color of title must be held to begin with this conveyance because the preceding deeds are all limited to the land conveyed by Beckley, commissioner, to Abbott, and, as we have seen, that deed did not embrace the land in dispute. The possession of Snuffer, therefore, before the execution of his deed to Azel Ford, could not extend to any land except that in his actual possession because he had no color of title. After this deed of 1892 from Snuffer to Ford there was no continuous adverse possession on the part of the defendants for 10 years. It is true that one of the defendants claimed the land and leased it to Farmer in 1902, but there was no continuous possession by Farmer. He built a small house in which he kept some tools, but which he never occupied, cut a few saplings, and burnt brush from time to time, but this was not the adverse possession required by the statute of West Virginia.

"A mere claim to possession, accompanied by the occasional cutting of timber, the prevention of trespasses, the payment of taxes, and the assertion of title, is not sufficient, but it must be such occupation, use, or holding of the property, or change in its character, as will make such claimant during such statutory period continuously subject to be treated as a trespasser." Wilson v. Braden, 56 W. Va. 372, 49 S. E. 409, 107 Am. St. Rep. 927; State y. Moore, 71 W. Va. 285, 76 S. E. 461.

The plaintiff's possession of a portion of the land embraced in the interlock with the older grant was proved to have been continuous since 1899 under the junior grant. Hence the plaintiff's possession of a part of the interlock would extend to the land in dispute, and vest in him a good title, since there was no actual possession of the defendant after 1892 of any portion of the land in dispute sufficient to confer a good title, and no possession at any time of a part of the interlock under the senior grant. Camden y. West B. L. Co., 59 W. Va. 148, 53 S. E. 409; Chilton v. White, 72 W. Va. 545, 78 S. E. 1048.

[3] But if it be assumed that the land in dispute was embraced in the conveyance of tract No. 2, and that the defendants and those under whom they claim did acquire title from Beckley, commissioner, the plaintiff is nevertheless entitled to recover under the tax laws of West Virginia as construed by the Supreme Court of that state. The plaintiff's first claim under these tax laws is that upon the forfeiture in 1840 of the whole of the Rutter and Etting grant the title was transferred to and vested in his predecessors in title by virtue of the junior grant and payment of taxes for 5 years. This claim is without foundation. Under the laws of the state of Virginia then in force, the forfeiture for nonassessment and nonpayment of taxes under a senior grant transferred the title to the junior grantee of the state against whom the land was assessed and by whom the taxes had been paid for 5 years only when the claimant under the junior grant was in possession. Inasmuch as there was no proof of possession at that time under the junior grant, this forfeiture inured to the benefit of the state, and not to the benefit of the plaintiff or his predecessors in title. Atkins v. Lewis, 14 Grat. (Va.) 30.

[4] The serious claim which the plaintiff makes to the benefit of a forfeiture arises under the law of the state of West Virginia as it stood in 1883, when the second alleged forfeiture occurred. The provision of the Constitution of that state is as follows:

"All title to lands in this state heretofore forfeited, or treated as forfeited, waste and unappropriated, or escheated to the state of Virginia, or this state, or purchased by either of said states at sales made for the non-payment of taxes and become irredeemable, or hereafter forfeited, or treated as forfeited, or escheated to this state, or purchased by it and become irredeemable, not redeemed, released, or otherwise disposed of, vested and remaining in this state, shall be, and is hereby transferred to, and vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), for so much thereof as such person has, or shall have had actual continuous possession of, under color or claim of title for ten years, and who, or those under whom he claims, shall have paid the state taxes thereon for any five years during such possession; or if there be no such person, then to any person (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), for so much of, said land as such person shall have title or claim to, regularly

derived, mediately or immediately from, or under a grant from the commonwealth of Virginia, or this state, not forfeited, which but for the title forfeited, would be valid, and who, or those under whom he claims has, or shall have paid all state taxes charged or chargeable thereon for five successive years, after the year one thousand eight hundred and sixty-five, or from the date of the grant, if it shall have issued since that year; or if there be no such person, as aforesaid, then 'to any person (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), for so much of said land as such person shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year one thousand eight hundred and sixty-five and have paid all state taxes charged or chargeable thereon for said period." Const. 1872, art. 13, § 3.

Section 1099 of the Code of West Virginia is in the same language.

If the defendants were in possession rightfully holding under the senior grant as they claim, and failed to have the land assessed and to pay the taxes, then forfeiture would inure to the benefit of the plaintiff or his predecessors in title claiming under a junior grant and paying taxes for the 5 preceding years.

It appears from the record that the two undivided one-third interests claimed by the predecessors in title of the defendants were entered upon the land books and charged with taxes. But it also appears that one undivided one-third interest was not placed on the land books, and not assessed, and the taxes thereon were not paid. It is not a compliance with the tax law of West Virginia to place separately on the land books undivided interests. In construing the Constitution and statute, the Supreme Court of the state has held that each separate tract must be returned as an entirety, and that if an undivided interest is left off and not charged with taxes for five successive years, the omission operates as a forfeiture of the entire land. This forfeiture by reason of the failure to place one-third interest on the land books occurred in 1883. Before that time the Supreme Court of West Virginia had decided that such a failure would operate as a forfeiture of the entire tract. Smith, Trustee, v. Tharp, 17 W. Va. 221. And this decision has been reaffirmed by Toothman v. Courtney, 62 W. Va. 167, 58 S. E. 915, 921; Caretta Ry. Co. v. Fisher, 74 W. Va. 115, 81 S. E. 710.

"These cases hold that the lands owned by cotenants cannot lawfully be assessed to each of them by an acreage equal to his share, or by a fractional part representing his undivided interest; and that, if thus assessed, and any undivided interest is omitted from the land books and not charged with taxes for 5 successive years, title to the entire tract becomes forfeited, and vests in the state, notwithstanding entry and payment of the taxes assessed may have been made as to other undivided interests therein." Lawson v. Pocahontas, etc., Co., 73 W. Va. 296, 81 S. E. 583.

This construction of the state statute is, of course, binding on this court.

The record affords no escape from the conclusion that the plaintiff was entitled to recover the land in dispute, and the district judge was right in directing a verdict.

Affirmed.