## UNITED STATES v. STATE INV. CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   November 9, 1922.)

No. 6088.

1. Boundaries ⬤⇒3(3)—Survey re-established from existing monuments rather than from courses and distances given.

Where the western boundary of a Mexican grant, as shown by the plat and field notes of the original survey made under direction of the Surveyor General of New Mexico, in accordance with which patent was issued, was a north and south line passing through two intermediate monuments, which were found, and the northwest and southwest corners were not found, the boundary is fixed by such line, rather than by attempting to relocate the corners from the courses and distances given.

2. Boundaries ⬤⇒3(3, 5)—Monuments in survey prevail over courses and distances; between courses and distances, former prevail.

In relocating a survey, monuments prevail over courses and distances, and between the latter courses prevail.

3. Boundaries ⬤⇒10—Plat embodied in a patent by reference is a monument.

A plat embodied in a patent by reference is itself taken as a monument.

4. Public lands ⬤⇒221—Boundaries of Mexican grant cannot be changed by subsequent surveys of public lands.

The boundaries of a Mexican grant, established by governmental authority and embodied in a patent, cannot be affected by subsequent government surveys of public lands.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit in equity by the United States against the State Investment Company and others.   Decree for defendants, and complainant appeals.   Affirmed.

S. W. Williams, Sp. Asst. Atty. Gen., and John McPhaul, Chief Law Clerk, General Land Office, for the United States.

S. B. Davis, Jr., of East Las Vegas, N. M. (A. T. Rogers, Jr., and C. W. G. Ward, both of East Las Vegas, N. M., on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

LEWIS, Circuit Judge.   This suit was brought by appellant to quiet its claimed title to a strip of land about three and a half miles wide along the west boundary of the Mora Grant, in New Mexico.   Appellees, in their answer, claimed title as owners of the grant and asked that it be quieted in them; and decree was in their favor.   The west boundary of the grant and the east boundary of appellant's forest reserve coincide.   Appellant claims that the strip of land is west of that line and outside the grant, while appellees claim that it is east of that line and within the grant.   So that the one controverted question of fact is as to the true location of that line.   The grant was made in 1835, and after change of sovereignty over the territory it was confirmed by Act June 21, 1860 (12 Stat. 71).   As originally made, its boundaries were given in these general terms:

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"On the north the Ocate river; on the south to where the Sapeyo empties; on the east the Aguage de la Yegua, and on the west the Estillero."

[1] In 1876 U. S. Patent issued by which all rights and interests of the United States in the grant were quit-claimed to Jose Tapia et al., their heirs and assigns. But before that the Surveyor General of New Mexico employed Thomas Means to survey its outer boundaries, which he did in 1861, a large part of the west boundary line being projected over the mountains by triangulation. His survey was approved and followed in the patent description. A plat made from that survey showing boundary lines of the grant was filed in the Land Office and referred to in the patent. Means started at the southeast corner and ran a line north for the east boundary until he reached the Ocate river, thence, for the north boundary, up that river westerly to the mountain range extending north and south, where he raised a large mound of earth, now lost, and tied it to permanent natural objects, reporting this mound as being 10 miles 40 chains and 54 links (by calculation) east of the northwest corner of the Mora Grant, inaccessible in the mountains. He had located the Estillero on the west boundary, and meandering along the eastern slope to the southwest he made a traverse from the mound of earth to the Estillero. He continued his traverse south on the east side of the range to Rio Sapello (Sapeyo), and finding the northwest corner of the Las Vegas Grant on the south side of that river, reported:

"From this point the S. W. cor. of Mora Grant by calculation, is due West 2m. 3.10 chs. inaccessible,—a line passing through the Estillero N. & S. will intersect the Rio Sapello 2 miles, 3.10 chs. west of the N. W. cor. of Las Vegas grant, which point of intersection is the S. W. cor. of Mora Grant."

Three months later, evidently relying on his calculation for the S. W. corner, he started at the northwest corner of Las Vegas Grant (according to his field notes) and ran 2 miles, 3.10 chs. west up Rio Sapello, where he set a stone 20x14x6 inches marked S. W. C. M. G., for southwest corner of Mora Grant, on the left bank 1.52 chs. north from stream on edge of high mountain on south side, and reported that he could not produce the line further north on west boundary. That stone has never been found and that corner is lost. At the same time he returned to the Estillero. The court found from the evidence, and the finding is amply supported, that the Estillero—

"is a place in the valley of the Pueblo river extending down the valley of the Pueblo river from the Cannon de los Abequesenos or Canon de los Ratones on said river to the Angostura de los Caballos along said river for a distance of about 2½ miles."

It is just west of a gap in the range. There Means set a stone 30x19x7 inches marked on the east side W. B. M. G., for west boundary of Mora Grant, and on the west side EO, for Estillero, and around this stone he raised a large mound of stones for point on west boundary of grant. He gave this stone two ties, one a pine tree 17 inches in diameter north 3.71 chs., and at the east side of the tree set a stone 20x12x3 inches marked W. B. M. G. in a mound of stones at base of a high, rough mountain, over which he reported he could not go. He then returned to the stone marked EO, and ran south 2.30 chs. trail

to Picuris, 18.18 chs. Rio Pueblo, 34.50 chs. to foot of high mountain, over which he reported he could not go; and at this point set a stone marked W. B. M. G. in mound of stones for point on west boundary of Mora Grant. These two monuments on either side of the Pueblo river are now found in place. It is said by appellant's counsel that the stones were moved after they were set by Means, or, if not, they were placed by Means without regard to the other boundaries of the grant. This contention must be rejected, as it was by the trial court; for there is no evidence to support it, but on the contrary they were found there by Surveyor Walker in 1902, who was employed by appellant to survey some townships that closed upon the western boundary of the grant, they were seen there, especially the one marked EO, as early as 1866, by residents of that locality, who further testified that they had seen them there from time to time since, and for the further convincing reason that there is no other place at the Estillero along and across the Pueblo river where they could be put so as to be in accord with the course and distance given by Means for their locations, relative to that river and to each other. There was also evidence that the third stone north of the EO stone was found, but in broken pieces. Walker being convinced that the stones which he found at the Estillero were set by Means as monuments to mark the west boundary of the grant, were in place and were calls in the patent, ran a north and south line through them and marked it. His line extended from a point eleven or twelve miles north of the Estillero, through the monument calls at that place and on south to the Sapello river, intersecting that stream about five miles west of the northwest corner of Las Vegas Grant. He described the country through which his line passed as "something fierce, very mountainous." Walker's survey was not approved. He was a witness at the trial.

Taking up the patent description at the mound of earth, Means' last monument on the north line, it runs thus:

"Thence from said large mound west ten miles, forty chains, fifty-four links to point for northwest corner of the Mora Grant inaccessible in the mountain and not set which point is ninety miles, thirty-six chains, twenty-eight links from the beginning at the southeast corner. Thence south from said point for northwest corner. At thirteen miles, seven chains, forty-one links on course * * * a stone thirty by nineteen by seven inches in size in large mound of stones and marked W. B. M. G. and on the west side EO. (Ties of that stone to natural objects made by Means are then given.) At thirteen miles, nine chains, seventy-one links a trail to Picuris bearing northwest. At thirteen miles, twenty-five chains, fifty-nine links the Pueblo river bearing northwest and southeast. At thirteen miles, forty-one chains, ninety-one links, at foot of high mountain, a stone eighteen by twelve by five inches in size in a mound of stones and marked W. B. M. G. At thirty-three miles, thirty-three chains, twenty-nine links on course * * * southwest corner of the Mora Grant, a stone twenty by fourteen by six inches in size in a mound of stones and marked S. W. C. M. G. and standing on the edge of a high mountain on left bank of the Sapeyo river, one hundred and fifty-two links north of the stream."

The plat referred to in the patent shows an east and west line from the mound of earth to the northwest corner and a north and south line from the northwest to the southwest corner through the stone monuments at the Estillero. The two stones with their markings, called

for in Means' field notes, are noted on the west line of the plat, also the mound of earth on the north line. It now turns out that there were errors in Means' traverse, so that the calculations that were made for the northwest and southwest corners put both of them east of a north and south line through the Estillero,—the calculation as to the projected north boundary being about 2⅓ miles short, and as to the south boundary about 3½ miles short. The land in controversy lies east of this north and south line.

In 1909 Alonzo E. Compton undertook to run out the west boundary of the grant for appellant. What he did appears to have been in compliance with instructions. For the southwest corner of the Mora Grant he selected a stone 20x14x6 inches 75 links north of the water's edge of the Sapello river, which was 199 chains 55 links west and 73 chains 16 links north of the northwest corner of the Las Vegas Grant as re-established in 1899 by Surveyor Johnson. He made no claim that this stone was the one called for in Means' field notes as the southwest corner of the Mora Grant. It does not agree with that stone in size. He did not testify that it was marked at all, neither did it agree with the courses and distances given by Means. No one testified that Means put it there, nor were there any circumstances that would lead to that conclusion. From that stone he ran slightly east of north to the north boundary. Appellant contends that this line is the west boundary. It ran east of the monuments at the Estillero about three miles, it did not cross the Pueblo river, and intersected the north boundary at a point 9 miles 66 links west of where Compton said the large mound of earth erected by Means on the north boundary stood. The land in controversy lies west of this line, and appellant's claim rests wholly on the contention that this is the true west boundary of the grant. In our opinion the contention is without support.

[2, 3] We are further of the opinion that the north and south line through Means' monuments at the Estillero is the true boundary. Because, first, the southwest corner being lost, the artificial monuments at the Estillero control. The southwest corner of the grant is a point on the west boundary. The artificial monument which is supposed to have marked it being lost, its location cannot be re-established by courses and distances which put it at a place in conflict with a course from known monuments in the same boundary. Monuments prevail over courses and distances, and between the latter courses prevail. Newsom v. Pryor's lessee, 7 Wheat. 7, 5 L. Ed. 382; Silver King Co. v. Conklin Co., 255 U. S. 151, 41 Sup. Ct. 310, 65 L. Ed. 561; U. S. v. Redondo Development Co., 254 Fed. 656, 166 C. C. A. 154; Ewart v. Squire, 239 Fed. 34, 152 C. C. A. 84; Watkins v. King, 118 Fed. 524, 55 C. C. A. 290; 9 C. J. 217, 218, 226. Because, secondly, the plat referred to in the patent shows the west boundary to be a north and south line through the monuments at the Estillero, and places the southwest corner at the intersection of that line with the Sapello river. The plat, for present purposes, is embodied in the patent by reference, and is itself taken as a monument. Jefferies v. Land Co., 134 U. S. 178, 194, 10 Sup. Ct. 518, 33 L. Ed. 872; Chapman & Dewey v. St. Francis, 232 U. S. 186, 197, 34 Sup. Ct. 297, 58 L. Ed. 564; Wilson v. Chicago L.

& T. Co., 143 Fed. 705, 74 C. C. A. 529. Moreover, we think this conclusion is in accord with and carries out the intent of the parties as it is exhibited by patent, by plat and by field notes of the patent survey.

[4] Counsel for appellant insist that great weight should be given to the fact that government surveys made in 1882 show the east boundary of several townships abutting on the Compton line, citing in support Kirwan v. Murphy, 189 U. S. 35, 23 Sup. Ct. 599, 47 L. Ed. 698, and other cases, wherein it is held that the right and power to make and correct surveys of public lands is lodged in the political or executive branch and cannot be interfered with by the judicial. The principle is undoubtedly sound and firmly established, but here the patent for the Mora Grant had been issued many years before the surveys of those townships were made, the lands which it conveyed had been segregated from the public domain, the rights of the patentees and their assigns to those lands had become vested in them and could not be taken away, diminished or interfered with arbitrarily and without an opportunity given to those interested in the grant to be first heard. The rule invoked has no application here. In Kean v. Calumet Co., 190 U. S. 452, 23 Sup. Ct. 651, 47 L. Ed. 1134, it is said:

"The resurvey by the United States in 1874 does not affect the Calumet Company's rights. As the United States already had conveyed the lands, it had no jurisdiction to intermeddle with them in the form of a second survey."

The same principle is repeated in Lane v. Darlington, 249 U. S. 331, 39 Sup. Ct. 299, 63 L. Ed. 629. We agree with the District Judge that the ex parte survey of 1882 was an immaterial fact.

Affirmed.